IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**THOMAS BILLUPS**                                                                  **PLAINTIFF**

**v.**                                      **CIVIL ACTION NO.: 1:24-CV-74-SA-DAS**

**LOUISVILLE MUNICIPAL SCHOOL DISTRICT**            **DEFENDANT**

<u>**MEMORANDUM OF AUTHORITIES IN SUPPORT OF
DEFENDANT LOUISVILLE MUNICIPAL SCHOOL DISTRICT'S
MOTION FOR SUMMARY JUDGMENT**</u>

COMES NOW, Defendant, Louisville Municipal School District, by and though counsel, and respectfully files this, its Memorandum of Authorities in Support of its Motion for Summary Judgment, as follows:

**I.    INTRODUCTION**

This case arises from Thomas Billups's disagreement with Louisville Municipal School District's decision to hire a successful and qualified internal candidate for the Head Boys Basketball Coach job instead of him. Billups believes that he was not hired due to his age; but this is not true.

Summary Judgment should be granted to Louisville Municipal School District for numerous reasons. First, Billups fails to make a *prima facie* case under the ADEA for failure to hire/interview. This is because LMSD was not seeking applicants for the position, instead, hiring internally; and, Billups failed to submit any valid application to LMSD for the Boys Basketball Head Coach job. Even if Billups could make a *prima facie* case, which he cannot, LMSD still had legitimate, non-discriminatory reasons for not hiring him for the position. Lastly, Billups cannot show that the legitimate, non-discriminatory reasons for LMSD's failure to hire him were pretext

1

for age-based discrimination.

LMSD is entitled to summary judgment.

**II.     FACTS**

This case arises from Thomas Billups's claim that he was not hired for the Boys Basketball Head Coaching Position at Louisville High School on the basis of his age.[1] Billups received a Right to Sue letter from the EEOC on January 25, 2024.[2] At the EEOC, Billups alleged that in May 2023 he applied for the position of the Head Boys Basketball Coach at LMSD.[3] He further stated that LMSD selected a "substantially younger and less experienced coach, Mitchell McCurry (34-years-old), for the position. . . . I have been discriminated against due to age, in violation of the ADEA."[4]

Billups filed his Complaint on April 19, 2024.[5] Therein, Billups alleges that he was not hired as the Head Boys Basketball Coach due to his age, constituting a violation of the Age Discrimination in Employment Act ("ADEA").[6] Billups ADEA claim fails.

In late March or early April of 2023, Collin Tippett (who was the current head boys basketball coach at Louisville High School) notified Tyrone Shorter (the LHS Athletic Director) that he would be stepping down at LHS to seek a position closer to his children in the Lowndes County, Mississippi, area.[7] After Coach Tippett informed Shorter that he was leaving LHS, Coach Tippett informed his team.[8] Mitchell McCurry was the Head Girls Basketball Coach at LHS at this time,

---

[1] **[Doc. 1]**.
[2] **[Doc. 1-2]**.
[3] **[Doc. 1-1]**
[4] **[Doc. 1-1]**.
[5] **[Doc. 1]**.
[6] **[Doc. 1]**.
[7] Exhibit "A" – Deposition of Tyrone Shorter at pg. 8, ln. 22 – pg. 9, ln. 11; Exhibit "B" – Deposition of Danya Turner at pg. 6, lns. 3-15.
[8] Ex. A at pg. 12, lns. 19-21; Ex. B, at pg. 6, lns. 13-15.

2

and he also helped/assisted Coach Tippett with the boys team.[9] Although Coach McCurry was not the official assistant for the boys team, he often stayed to help Coach Tippett with drills, run practice offenses and defenses, and just help with anything Coach Tippett needed to prepare the team for the season or specific games.[10]

After Coach Shorter received Coach Tippett's resignation, he spoke with LHS Principal Danya Turner.[11] Shorter informed Turner that they would need to hire a new basketball coach.[12] Shortly after Coach Tippett's announcement that he was leaving LHS, members of the boys basketball team sought Shorter, Turner, and McCurry out to inform them that the team wanted Coach McCurry to be their next coach.[13] Two other assistant coaches on LHS's campus also expressed interest in the job.[14]

After discussion between Shorter and Turner, they determined that they would interview the three (3) internal candidates for the job.[15] The Head Boys Basketball Coach job was never opened to external applicants, posted on the school website, or otherwise publicly announced by any LMSD employee.[16] This complies with LMSD's policy to first look at internal candidates to fill open positions before posting the job and receiving applications from external candidates.[17] LMSD implements this policy with the goals of retaining qualified personnel, building leadership within the schools, and promoting internal growth, opportunities, and production of their

---

[9] Ex. A at pg. 9, lns. 14-24; Ex. B at pg. 8, ln. 11 – pg. 9, ln. 19.
[10] Ex. B at pg. 8, lns. 11-23; Exhibit "C" – Deposition of Mitchell McCurry at pg. 8, ln. 17 – pg. 10, ln. 11.
[11] Ex. A at pg. 11, lns. 4-11; Ex. B at pg. 6, lns. 3-15.
[12] Ex. A at pg. 11, lns. 4-11.
[13] Ex. A at pg. 12, ln. 14 – pg. 13, ln. 24; Ex. B at pg. 6, ln. 16 – pg. 7, ln. 3; Ex. C at pg. 10, ln. 20 – pg. 11, ln. 23.
[14] Ex. A at pg. 11, lns. 4-21; Ex. B at pg. 9, lns. 3-14.
[15] Ex. A at pg. 11, lns. 4-21; Ex. B at pg. 9, lns. 3-14.
[16] Ex. A at pg. 13, lns. 19-24; at pg. 15, ln. 24 – pg. 15, ln. 3; at pg. 42, lns. 19-25; Ex. B at pg. 8, lns. 5-8; at pg. 13, lns. 8-20; Exhibit "D" – Deposition of Dr. David Luke at pg. 11, lns. 16-18.
[17] Ex. A at pg. 6, ln. 15 – pg. 8, ln. 6; at pg. 13, lns. 22-24; Ex. B at pg. 7, lns. 4-14; at pg. 11, ln. 19 – pg. 12, ln. 12; Ex. D at pg. 6, ln. 5 – pg. 7, ln. 1.

3

employees.[18]

After interviewing Coach McCurry, Shorter and Turner determined that he was the most qualified candidate for the job.[19] This decision was based on Coach McCurry's pre-existing relationship with the boys basketball team, his success in coaching the girls basketball team to a state championship the previous year, recommendations from current members of the boys basketball team, his coaching style and work ethic, and his plan to coach both the girls and boys teams effectively.[20]

Shorter and Turner then recommended that Coach McCurry be hired as the Head Boys Basketball Coach to Dr. Luke (LMSD Superintendent).[21] Dr. Luke had a discussion regarding the recommendation with Shorter and Turner, and ultimately submitted the recommendation to the Board for approval.[22] On May 9, 2023, the LMSD Board approved Coach McCurry as the Head Boys Basketball Coach.[23]

At some point in early April, Thomas Billups was informed by members of the community group called "Trojans 4 Life" that there was a vacancy for the Head Boys Basketball Coach at Louisville High School.[24] The members of Trojans 4 Life told Billups that he should apply for the job.[25] After learning of the opening, Billups submitted a general, and incomplete, application online for a general "coaching" job at LMSD.[26] He also hand delivered his resume and incomplete

---

[18] Ex. B at pg. 7, lns. 4-14; at pg. 11, ln. 19 – pg. 12, ln. 12; Ex. D at pg. 7, lns. 2-14.
[19] Ex. A at pg. 18, lns. 7-9; Ex. B at pg. 8, lns. 11-14.
[20] *See* Section IV.B.2.
[21] Ex. B at pg. 8, lns. 1-4.
[22] Ex. D at pg. 8, ln. 5 – pg. 10, ln. 9.
[23] Ex. D at pg. 8, lns. 5-23; at pg. 10, lns. 19-21.
[24] Exhibit "E" – Deposition of Thomas Billups at pg. 26, lns. 4-22.
[25] Ex. E at pg. 26, lns. 13-20.
[26] Ex. E at pg. 27, lns. 3-11; at pg. 28, ln. 7 – pg. 29, ln. 7. *See also* Exhibit "F" – Billups Application at DEF 64; Exhibit "G" – LMSD Personnel Handbook at DEF 23.

4

application to Turner—leaving it with his secretary.[27]

After Billups learned that he was not hired for the Head Boys Basketball Coach position, he called Turner and spoke to him in an aggressive manner regarding LMSD's decision to hire Coach McCurry.[28] Billups told Turner that he was going to lose his job for not doing what the school board told him to do, and made other vague and aggressive comments during their conversation.[29] Billups also accused Turner of age discrimination in this phone call.[30]

### III. STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[31] "If a moving party shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law, the nonmoving party 'must come forward with specific facts showing a genuine factual issue for trial.'"[32] "To this end [the plaintiff] must submit 'significant probative evidence' in support of his claim."[33] "'If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.'"[34]

"'[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated

---

[27] Ex. B at pg. 20, lns. 14-22; Ex. E at pg. 27, lns. 3-11.
[28] Ex. B at pg. 14, lns. 7-16.
[29] Ex. B at pg. 14, lns. 8-10.
[30] Ex. B at pg. 14, lns. 10-11.
[31] Fed. R. Civ. P. 56(a).
[32] *Culley v. W. Bolivar Consol. Sch. Dist.*, 2023 U.S. Dist. LEXIS 135762, at *8-*9 (N.D. Miss. Aug 4, 2023) (quoting *Harris v. Pontotoc County Sch. Dist.*, 635 F.3d 685, 690 (5th Cir. 2011)).
[33] *Craft v. Par. Of Jeff Davis*, 2024 U.S. Dist. LEXIS 27799, at *3 (W.D. La. Feb. 16, 2024) (quoting *State Farm Life Ins. Co. v. Gutterman,* 896 F.2d 116, 118 (5th Cir. 1990)).
[34] *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

5

assertions, or 'only a scintilla of evidence.'"[35] Thus, "if the nonmoving party fails to meet this burden, the motion for summary judgment must be granted."[36]

IV. LAW AND DISCUSSION

Billups fails to make an ADEA claim against LMSD for several reasons. First, Billups cannot make a prima facie case of age discrimination. Second, even if he could, LMSD had legitimate, non-discriminatory reasons for not interviewing/not hiring Billups in the head boys basketball coach position. Lastly, Billups cannot establish pretext. For all of these reasons, summary judgment should be granted.

The ADEA provides that "'it shall be unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual . . . because of such individual's age.'"[37] Thus, "'[t]o establish an ADEA claim, a plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the but-for cause of the challenged employer decision.'"[38] "A plaintiff makes a prima facie ADEA discrimination claim for failure to hire by showing '(1) he belongs to a protected class; (2) he applied for and was qualified for a position that was seeking applicants; (3) he was rejected; and (4) following his rejection, another applicant not of the protected class was hired.'"[39]

When ADEA claims are based on circumstantial evidence, the Fifth Circuit applies the well-known *McDonell Douglas* burden shifting framework.[40] First, Billups must establish a prima facie

---

[35] *Culley,* 2023 U.S. Dist. LEXIS 135762, at *9 (quoting *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (other citations and quotations omitted)).
[36] *Id.* (other quotations and citations omitted)).
[37] *Easely v. Lowndes Cty.*, 2022 U.S. App. LEXIS 129, at *6 (5th Cir. Jan. 4, 2022) (quoting 29 U.S.C. § 623(a)(1)).
[38] *McDaniel v. AMTRAK*, 705 Fed. Appx. 240, 245 (5th Cir. 2017) (quoting *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) (cleaned up)).
[39] *Id.* (quoting *Haas v. ADVO Sys., Inc.*, 168 F.3d 732, 733 (5th Cir. 1999)).
[40] *Easley*, 2022 U.S. App. LEXIS at *6 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 807, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222-23 (5th Cir. 2000)).

case of age-based discrimination.[41] Next, the burden shifts back to LMSD to "offer a non-discriminatory reason for its actions."[42] After LMSD offer such legitimate, non-discriminatory reasons, the burden shifts back to Billups to "rebut [LMSD's] stated reasons and show that they are 'merely pretextual.'"[43]

### A. Billups Fails to Make a *Prima Facie* ADEA Discrimination Claim.

As stated above, in order to make a prima facie age-discrimination claim under the ADEA, Billups must show that "(1) he belongs to a protected class; (2) he applied for and was qualified for a position that was seeking applicants; (3) he was rejected; and (4) following his rejection, another applicant not of the protected class was hired."[44] Here, Billups cannot show that (1) LMSD was seeking applicants for head coach job or (2) that he applied for the position. As such, it follows that he was never rejected from the position. Billups cannot set forth a prima facie case.

### 1. LMSD Was Not Seeking Applicants for the Boys Head Coaching Job.

Billups cannot make a prima facie case of age-discrimination for failure to hire/interview because it is undisputed that LMSD was not seeking applicants for the basketball head coaching job. It is well-established that to sufficiently prove a *prima facie* case, Billups must show that he applied for and was qualified for a position *that was seeking applicants*.[45] This, Billups cannot do.

First, it is undisputed that LMSD did not post or announce that the position was open.[46] Billups himself testified that he only learned that Coach Tippett had resigned through his involvement with Trojans 4 Life—not from any official job announcement by LMSD or from anyone at

---

[41] *Id.* at *6-*7.
[42] *Id.* at *7 (citing *Berquist v. Washington Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007)).
[43] *Id.* (citing *Moss*, 610 F.3d at 922).
[44] *McDaniel*, 705 Fed. Appx. at 245 (citations omitted).
[45] *See id.* (emphasis added).
[46] Ex. B at pg. 13, lns. 8-20; Ex. A at pg. 15, ln. 24 – pg. 16, ln. 3.

LMSD.[47] Additionally, when other non-employees called to inquire about the job, Coach Shorter informed them that when/if the job was opened to outside applicants, then a resume may be sent to LMSD to be considered.[48] And these candidates only knew of a potential job opening due to a post on social media by Coach Tippett—not from LMSD.[49] Further still, LMSD did not even seek applications from internal candidates they considered.[50]

Here, there is absolutely no record evidence that LMSD was seeking applicants for the boys basketball head coaching job. Indeed, if a plaintiff could establish that an employer was "seeking applicants" by simply expressing interest and providing a resume to an employer, it would render the *prima facie* analysis meaningless. Billups has failed to make a *prima facie* case of age-discrimination and summary judgment should be granted on this basis alone.[51]

**2. Billups Did Not Apply for the Boys Head Coaching Job.**

Even if this Court finds that LMSD was seeking applicants for the coaching job, which it should not, Billups still did not apply to be the Boys Basketball Head Coach. Again, to show a *prima facie* case, Billups must show that he actually applied for the job in question.[52] Billups did not do so.

As stated above, the boys basketball coaching job was never opened to external applicants, as

---

[47] Ex. E at pg. 26, lns. 4-22.
[48] Ex. A at pg. 41, ln. 22 – pg. 42, ln. 14.
[49] Ex. A at pg. 41, lns. 15-22.
[50] Ex. C at pg. 18, ln. 25 – pg. 19, ln. 10.
[51] *See Donnelly v. Acad. P'ship LLC*, 2023 U.S. Dist. LEXIS 104078, at *26 (N.D. Tex. June 14, 2023) ("AP made clear that it would fill some of the new Senior Manager positions using placement (rather than with applications and interviews) by employees who met the requirements and that it would post future Senior Manager positions for applications and interviews. AP created and filled three Senior Manager positions without taking applications, so Johnson could not have applied and does not claim she did. Thus, Johnson cannot establish a prima facie failure-to-promote case because she cannot show that she 'applied . . . for a job for which her employer was seeking applicants.'").
[52] *See McDaniel*, 705 Fed. Appx. at 245 (citations omitted).

8

such, Billups could not have applied for the job.[53] Nevertheless, it is anticipated that Billups will argue that because he submitted a general application online and dropped it off to Mr. Turner—he sufficiently showed he applied. This is false.

First, it is undisputed that Billups only filled out a general employment application on LMSD's website indicating he wanted a "coaching" job.[54] Additionally, Billups's "application" he submitted was not even valid per LMSD's policies. In the personnel handbook, LMSD states "[i]n order for an application to be valid, a completed application on Applitrack and the following uploaded documents must be present: (a) copy of college/university transcript(s), (b) copy of Praxis scores if required for certification, (c) valid copy of the applicant's professional license issued by the Mississippi Department of Education with an endorsement in the area(s) of work for which the applicant is applying."[55] Here, Billups did not include any transcripts with his application or a copy of his professional license(s).[56] As such, Billups did not even have a valid application on file with LMSD for LMSD to consider (if they were considering outside applicants for the job).[57]

As such, even if LMSD were accepting applicants for the boys head coaching position, Billups failed to apply for the job because (1) he only applied for some general coaching position within

---

[53] *See Donnelly,* 2023 U.S. Dist. LEXIS 104078, at *26 ("AP created and filled three Senior Manager positions without taking applications, so Johnson could not have applied and does not claim she did. Thus, Johnson cannot establish a prima facie failure-to-promote case because she cannot show that she 'applied . . . for a job for which her employer was seeking applicants.").
[54] Ex. E at pg. 28, lns. 7 – pg. 29, ln. 7 (Q: So I just don't see anywhere on here where it would indicate head basketball coach, but I could be wrong. I just see that it says you were trying to get a coaching position. A: Yeah, I guess that's what it was.); *see also* Ex. F at DEF 64.
[55] Ex. G at DEF 23, Section A(3).
[56] *See* Ex. F at DEF 63 (indicating no uploads associated with this applicant); at DEF 74-75 (indicating that his MDE Licenses were not issued until April 17, 2023, when he submitted his application on April 8, 2023).
[57] *See* Ex. G at DEF 23 (stating that once a position has been approved . . . [t]he administrator will retrieve the *valid* applications for the position from Applitrack . . . .").

LMSD[58] and (2) did not have a valid application on file to consider.[59] Furthermore, dropping off an application to a Principal does not comply with LMSD's vacancy policy for external applicants to apply for available open positions.[60] Billups has failed to prove a prima facie case of age-discrimination and summary judgment should be granted.

### B. LMSD had a Legitimate Non-Discriminatory Reason for Not Interviewing Billups.

Billups' claim fails nevertheless, as LMSD had legitimate, non-discriminatory reasons for failing to hire/interview him. "Where the plaintiff succeeds in establishing a prima facie case, the burdens shifts to the defendant to proffer a legitimate, nondiscriminatory reason for its action."[61] "The burden on the employer at this stage is one of production, not persuasion, and does not involve any assessment of the employer's credibility."[62] LMSD has articulated several legitimate, nondiscriminatory reasons for not interviewing/not hiring Billups in the coaching position.

### 1. LMSD Only Considered Internal Employees for the Boys' Head Basketball Coaching Job.

Billups was not considered/interviewed for the job because LMSD only considered internal/current employees to fill the position. Dr. Luke testified that LMSD's standard policy is to look internally.[63] He explained that when he says "internal" he means that the District "is going to look inside that school . . . whatever school has an opening they're going to look inside their building or their campus and to see if there's some moving, some shifting that they can do with

---

[58] *See* Ex. F at DEF 64.
[59] *See id.*; Ex. G at DEF 23.
[60] Ex. G at DEF 22-24.
[61] *Eugene Long v. city of Llano*, 2024 U.S. Dist. LEXIS 112354, at *10 (W.D. Tex. June 26, 2024) (internal quotation and citations omitted).
[62] *Dietz v. Zodiac Seats Us LLC*, 2020 U.S. Dist. LEXIS 31005, at *15 (E.D. Tex. Feb. 4, 2020) (quoting *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007)).
[63] Ex. D at pg. 6, lns. 9-11.

inside their building or promoting, whatever it might be."[64] Dr. Luke then stated that once the search on the specific school's campus is exhausted, the administrators "will go sort of district-wide internally and look to see if there's other people in the district that would . . . benefit from a move and plus benefit the school that they . . . would be moving to."[65] Only after the internal campus search, and District-wide search, does LMSD post the opening publicly and accept external applications.[66]

Both Mr. Turner and Coach Shorter's testimonies support this. Coach Shorter explained that "if we have a coach that's already in-house that's qualified for the job, what we normally do we interview in-house first. And then if we don't have – we feel like we don't have a person in-house that can do the job, then we open the job up."[67] Mr. Turner stated that he and Shorter considered the internal employees first because growing the leadership within their school is paramount and having coaches present at the school is most important in order to develop culture and relationships.[68] LMSD implements this policy with the goals of retaining qualified personnel, building leadership within the schools, and promoting internal growth, opportunities, and production of their current employees.[69]

Further, LMSD followed their policy of considering internal/in-house candidates before posting/opening up the job for external applications. There is no evidence that any external candidates were interviewed or considered for the head coach job.[70] Indeed, there is record

---

[64] Ex. D at pg. 6, lns 11-18.
[65] Ex. D at pg. 5, lns. 19-23.
[66] Ex. D at pg. 6, ln. 24 – pg. 7, ln 1.
[67] Ex. A at pg. 7, lns. 7-12.
[68] Ex. B at pg. 7, lns. 4-14; at pg. 11, ln. 19 – pg. 12, ln. 12.
[69] Ex. B at pg. 7, lns. 4-14; at pg. 11, ln. 19 – pg. 12, ln. 12; Ex. D at pg. 7, lns. 2-14.
[70] Ex. A at pg. 41, ln. 15 – pg. 42, ln. 14 (indicating that other coaches were calling Shorter but he told them that if they decide to post the job then resumes can be sent and that other external applicants were interested in the job); Ex. B at pg. 9, lns. 3-14 (indicating they interviewed three coaches currently employed at LHS); Ex D at pg. 8, lns.

evidence of the opposite.[71] This is a legitimate, non-discriminatory reason not hiring and/or considering Billups for the coaching job.[72]

### 2. Coach McCurry was the Most Qualified Candidate for the Job.

LMSD additionally proffers that Coach McCurry, not Billups, was the most qualified candidate for the job. First, per LMSD's policy of looking at internal employees first, Coach McCurry was already employed at Louisville High School, and was the Head Girls Basketball Coach, unofficial assistant for the boys basketball team, and taught classes within Louisville High School's campus.[73] Thus, Coach McCurry had prior relationships with the administration, faculty, and students, specifically the boys and girls basketball teams.[74] Coach McCurry had also been coaching at the high school level, and in the area, for approximately eight (8) years prior to becoming the Boys Head Basketball Coach at Louisville High School—and he had previously worked for the District right out of college.[75] In addition to coaching experience, Coach McCurry also taught a multitude of different subjects such as special education, geometry, transition to

---

7-16 (indicating that Dr. Luke was apprised of Shorter and Turner's decision to "see if they had viable candidates inside the school.").

[71] *Id.*

[72] *See Anderson v. Smithkline Beecham Clinical Laboratories, Inc.*, 1992 U.S. Dist. LEXIS 1611, at *16 (E.D. La. Feb. 10, 1992) ("SmithKline's policy of promoting within is a legitimate, nondiscriminatory reason for not hiring the plaintiff to fill the position of Credit and Collections Analyst."); *Godfrey v. Katy Indep. Sch. Dist.*, 395 Fed. Appx. 88 (5th Cir. 2010) ("[F]amiliarity and prior successful work experiences with an applicant are legitimate nondiscriminatory reasons for employment decisions."); *Lapaglia v. Air Liquid Am. Corp.*, 1997 U.S. App. LEXIS 42430, at *7 (5th Cir. Sept. 11, 1997) (implicitly crediting an employer's "policy to source candidates from within the organization whenever possible" and failing to consider external applicants as legitimate and nondiscriminatory); *Williams v. Newburgh Enlarged City Sch. Dist.*, 803 Fed. Appx. 485, 487-88 (2nd Cir. 2020) ("The burden shifted to the School District to articulate a legitimate, non-discriminatory reason for its hiring decisions, which the School District satisfied by pointing to a long-standing practice of preferring current employees when selecting candidates for open positions.").

[73] Ex. C at pg. 7, ln. 12 – pg. 10, ln. 11.

[74] *See Godfrey,* 395 Fed. Appx. at *92 ("Our sister circuit has found that familiarity and prior successful work experiences with an applicant are legitimate nondiscriminatory reasons for employment decisions. In addition, an employer has a right to value some attributes, such as prior work experience with the school, over others. . . . Here, a reasonable employer would consider past experiences with an applicant, particularly for a teaching position where interpersonal relations with students, other faculty, and the administration may be critical to the teacher's success.").

[75] Ex. C at pg. 5, ln. 5 – pg. 7, ln. 11.

12

algebra, algebra I, and physical education.[76] And he was very successful in the classroom.[77]

Further still, Coach McCurry was extremely successful as the head coach for the girls basketball program at Louisville High School, winning a State Championship in his second year of coaching and every girl he coached had gone on to play college ball.[78] Additionally, both Shorter and Turner testified that current players on the boys basketball team specifically requested that Coach McCurry be considered for the head coaching job.[79] Coach McCurry's testimony supports this, as he testified that "I know a lot of the guys wanted – they asked me would I be their next coach. And I think they was *[sic]* looking at the recent success of what I had with the girls, and, you know, working with them every day it just kind of felt comfortable for them."[80] Coach McCurry also had an effective plan to manage coaching both the girls and boys teams.[81] Moreover, Coach McCurry had great relationships with parents of his players.[82]

Lastly, both Shorter and Turner expressed that they were concerned that Billups would not be an effective coach at Louisville High School due to his "aggressive" coaching style.[83] Shorter explained that he had personally witnessed Billups "jerk on kids [and] curse them out in their face" and that "with [the kids at Louisville High School] we just felt like [Billups] wouldn't be a good fit for those kids we know at our school."[84] Turner also expressed the same concerns, noting that Billups had been aggressive with him on the phone relating to Coach McCurry being hired as the boys basketball coach; and additionally stating that he knew of a time when Billups "grabbed a

---

[76] Ex. C at pg. 6, ln. 1 – pg. 8, ln. 1.
[77] Ex. B at pg. 10, lns. 9-18.
[78] Ex. C at pg. 8, lns. 2-16.
[79] Ex. A at pg. 12, ln. 14 – pg. 13, ln. 24; Ex. B at pg. 6, ln. 16 – pg. 7, ln. 3.
[80] Ex. C at pg. 9, lns. 2-7.
[81] Ex. A at pg. 13, lns. 7-24; Ex. B at pg. 7, lns. 18-25.
[82] Ex. B at pg. 18, lns. 4-15.
[83] Ex. A at pg. 34, ln. 6 – pg. 36, ln. 12; Ex. B at pg. 22, ln. 7 – pg. 23, ln. 21.
[84] Ex. A at pg. 34, lns. 20-23.

player[;] snatched [the player] to him" as well as witnessing Billups being "very loud and vocal and aggressive" at a summer camp in Louisville.[85] Billups himself confirmed this coaching style in his deposition.[86]

On the other hand, Turner explained that Coach McCurry's coaching style "creates an awesome dynamic of culture for his players."[87] Turner explained that although Coach McCurry is "direct" with his players, "he is not aggressive. He is going to hear and hold you accountable. And, you know, he also relates to the kids."[88] Coach McCurry echoes this by explaining that his intent is to understand the child he is coaching—and that he's learned that "[y]ou can't coach every kid the same. So some kids are built for it, aggressive coaching, some kids are not, and if you're aggressive with all of them you're going to get a bad turnout."[89] Coach McCurry's coaching dynamic and understanding of his players has led to parents reaching out to him to ask that he have conversations with their children outside of school and outside of basketball.[90]

For all of the reasons above, Shorter, Turner, and LMSD all believed that Coach McCurry was the better qualified candidate for the boys basketball head coaching job at Louisville High School. This is a legitimate, nondiscriminatory reason for not interviewing/considering/hiring Billups for

---

[85] Ex. B at pg. 22, ln. 7 – pg. 23, ln 14.
[86] Ex. E at pg. 52, ln. 22 – pg. 54, ln. 18 (Q: Do you ever yell at your players? A: Oh yeah. I yell at them, but let me just say this: I yell at them and I tell them what they did wrong. I demonstrate what they did wrong. And after practice—**I'll tear them down at that minute**, but after practice they back up because I talk to them and tell them what they did wrong, and I'll tell them, hey, I'm not mad at you, but sometimes I have to raise my voice to get you to do what I need you to do. And I saw most coaches are going to do that. If you catch coaches that don't do that, they're not going to have a good program. And that's just me. That just the way—and I've never changed my way of coaching because I'm continuing to win. Why would I change? But I be up front and I'll be fair with kids. I treat them all the same. Q: Do you ever, like, have to cuss at them or anything? A: I don't cuss at them. Sometimes I might say a cuss word, but its not at them. I might say dang or shit or something like that, but it's not at them.).
[87] Ex. B at pg. 19, lns. 22-23.
[88] Ex. B at pg. 19, lns. 18-21.
[89] Ex. C at pg. 18, lns. 12-18.
[90] Ex. B at pg. 18, lns. 4-15.

the job of head boys basketball coach at Louisville High School.[91] Accordingly, any "'presumption raised by the prima facie case is rebutted, and drops from the case[.]'"[92]

### C. It Is Billups's Burden to Show that LMSD's Proffered Reasons Are Pretext.

Because LMSD has articulated legitimate, nondiscriminatory reasons for failing to interview/hire Billups, "the burden shifts back to [Billups], who 'must prove by a preponderance of the evidence that the legitimate reasons offered by the employer were not its true reasons, but were a pretext for discrimination.'"[93] Indeed, the "burden of persuasion remains on [Billups] to show that [LMSD] intentionally discriminated against him, which at the pretext stage of the *McDonnell Douglas* analysis under the ADEA requires a showing 'that age was a but-for cause of the employer's adverse decision.'"[94] "'To establish pretext, [Billups] must show that [LMSD's] proffered explanation was false or unworthy of credence.'"[95] This, Billups cannot do.

### V. CONCLUSION

For all of the reasons listed above, LMSD is entitled to summary judgment and Billups's

---

[91] *See Fitten v. Esper*, 2023 U.S. Dist. LEXIS 176054, at *12 (W.D. Tex. Sept. 28, 2023) ("Defendants provides a legitimate, nondiscriminatory reason for declining to hire Mr. Fitten: he 'was not deemed by the panel . . . to be the best qualified candidate for the position."); *Spann v. UPS*, 2018 U.S. Dist. LEXIS 109559, at *7 (N.D. Miss. June 29, 2018) ("In this case, UPS [provides a legitimate, non-discriminatory explanation] by proffering evidence that Swords was better qualified for the On-Road Supervisor because she wad a college degree and prior experience driving a UPS truck.") (citing *Patrick v. Ridge*, 394 F.3d 311, 319 (5th Cir.2004) ("[C]hoosing some other candidate because he is the best-qualified individual for the job is generally a legitimate, nondiscriminatory reason for an adverse employment action.")); *Desselle v. Louisiana*, 2021 U.S. Dist. LEXIS 111059, at *17 (M.D. La. June 14, 2021) ("Furthermore, the Fifth Circuit has acknowledged that 'choosing some other candidate because he is the best-qualified individual for the job is generally a legitimate, nondiscriminatory reason for an adverse employment decision . . . ."); *Knox v.PHC-Cleveland, Inc.*, 24 F. Supp. 3d 584 (N.D. Miss. 2014) ("Defendant's proffered reasons for these hiring decisions are sufficient to rebut Plaintiff's case on a prima facie level.") (citing *Patrick*, 394 F. 3d at 319)).
[92] *Yates v. Spring Indep. Sch. Dist.*, 115 F.4th 414, 421 (5th Cir. 2024) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993)
[93] *Busken v. City of Greenville*, 2021 U.S. Dist. LEXIS 212300, at *5 (N.D. Tex. Nov. 3, 2021) (quoting *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 474 (5th Cir. 2015)).
[94] *Tagliabue v. Orkin, L.L.C.*, 794 Fed. Appx. 389, 295 (5th Cir. Dec. 13, 2019) (quoting *Squyres v. Heico Cos., L.L.C.*, 782 F.3d 224, 231 (5th Cir. 2015) (additional citations omitted) (cleaned up)).
[95] *Yates*, 115 F. 4th at 421 (quoting *Vaughn v. Woodforest Bank*, 665 F.3d 632, 637 (5th Cir. 2011)).

Complaint should be dismissed with prejudice.

**WHEREFORE PREMISES CONSIDERED,** Defendant, Louisville Municipal School District, prays that Plaintiff's Complaint be dismissed with prejudice.

**RESPECTFULLY SUBMITTED** this the 22nd day of May, 2025.

                                            **JACKS| GRIFFITH| LUCIANO, P.A.**

                                    By:    /s/ ***Katherine P. McClellan***
                                                      Katherine P. McClellan, MS Bar No. 105718
                                                      Mary McKay Griffith, MS Bar No. 100785
                                                      Daniel J. Griffith, MS Bar No. 8366
                                                      Attorneys for Defendant

Of Counsel:

**JACKS| GRIFFITH| LUCIANO, P.A.**
150 North Sharpe Street
P. O. Box 1209
Cleveland, MS 38732
Phone No. 662-843-6171
FAX No. 662-843-6176
Email: katie@jlpalaw.com
        mgriffith@jlpalaw.com
        dgriffith@jlpalaw.com

**CERTIFICATE OF SERVICE**

      I, Katherine P. McClellan, attorney of record for Defendants, do hereby certify that I have this day caused a true and correct copy of the above and foregoing *Memorandum of Authorities in Support of Motion for Summary Judgment* to be delivered by the ECF Filing System which gave notice to the following:

            Louis H. Watson, Jr., Esq.
            Nick Norris
            Watson & Norris, PLLC
            4209 Lakeland Drive #365
            Flowood, MS 39232
            Phone: (601) 968-0000
            Email: louis@watsonnorris.com
            nick@watsonnorris.com
            **Attorneys for Plaintiff**

**DATED** this 22nd day of May, 2025.

                                              /s/ ***Katherine P. McClellan***
                                              Katherine P. McClellan