**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION**

**THOMAS BILLUPS**                                                                      **PLAINTIFF**

**v.**                                              **CIVIL ACTION NO.: 1:24-cv-74-SA-DAS**

**LOUISVILLE MUNICIPAL SCHOOL DISTRICT**                          **DEFENDANT**

**CORRECTED MEMORANDUM IN SUPPORT OF PLAINTIFF'S RESPONSE IN
<u>OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

### I.    Introduction

Plaintiff Thomas Billups respectfully opposes Defendant Louisville Municipal School District's (LMSD) Motion for Summary Judgment. This case arises from LMSD's decision to bypass Billups, a highly qualified 70-year-old coaching legend, for the Head Boys Basketball Coach position at Louisville High School, instead hiring a substantially younger, less experienced candidate. Compelling evidence, including direct statements by Athletic Director Tyrone Shorter that Billups was "too old" and should "retire," reveals age-based animus in violation of the Age Discrimination in Employment Act (ADEA).

Alternatively, under the *McDonnell Douglas* framework, Billups establishes a *prima facie* case of age discrimination, disputes LMSD's proffered reasons, and demonstrates pretext, with age as the "but-for" cause of his non-selection. Genuine disputes of material fact, such as Shorter's discriminatory remarks, LMSD's inconsistent hiring practices, and Billups' superior qualifications, all preclude summary judgment. Viewing the evidence in the light most favorable to Billups, as required by Federal Rule of Civil Procedure 56, this Court should deny LMSD's motion and allow a jury to resolve these critical issues.

### II.    Background Facts

In the spring of 2023, the quiet town of Louisville, Mississippi, buzzed with anticipation as a coveted position opened at Louisville High School: Head Boys Basketball Coach. Collin Tippett, who had led the team with dedication, informed Athletic Director Tyrone Shorter in late March or early April that he would resign to move closer to his children in Lowndes County. [Doc. 60-1 at p. 8-9]. Tippett shared the news with his players, leaving the team eager to learn who would guide them next. *Id.* at p. 12; [Doc. 60-2 at p. 6]. The vacancy sparked conversations among school administrators, community members, and a seasoned coach with deep ties to Louisville: Thomas Billups.

Billups, a celebrated figure in Mississippi basketball, had built a storied career, amassing multiple championships and earning a reputation as one of the state's winningest coaches who is in his seventies. [Doc. 60-5, at p. 14]; *See* Affidavit of Plaintiff, attached as Exhibit "A" at 1. In fact, Plaintiff coached Monta Ellis, who went on to play in the NBA straight out of high school. [Doc. 60-1 at p. 30-31]. Having grown up in Louisville, where he worked on his family's farm and maintained connections through relatives like the Hughes family, Billups was a local icon. *Id.* at p. 6. Word of the coaching vacancy reached him through "Trojans 4 Life," a passionate community group that saw Billups as the ideal candidate to lead the team. *Id.* at p. 26. Encouraged by their support, Billups acted swiftly.

On April 8, 2023, he submitted an online application for a general "coaching" position through LMSD's Applitrack system, a platform used for job applications. *Id.* at p. 27-28. To ensure his interest was clear, he personally delivered a resume and application

materials to the office of Principal Danya Turner, leaving them with Turner's secretary. *Id.* at p. 27-28; [Doc. 60-2 at p. 20].

The community rallied behind Billups. Members of Trojans 4 Life met with Turner, passionately advocating for Billups by highlighting his coaching achievements and his status as a hometown hero. [Doc. 60-2 at p. 15-16]. Even some LMSD Board members voiced support, using what Superintendent Dr. David Luke described as "persuasive language" to emphasize Billups' qualifications. [Doc. 60-4 at p. 11]. Billups himself followed up with Turner, engaging in conversations to express his keen interest in the head coach role [Doc. 60-5 at 27]; [Doc. 60-2 at 12–13]. Yet, unbeknownst to Billups, LMSD had no plans to open the position to external applicants.

Instead, LMSD adhered to its alleged policy of prioritizing internal candidates, choosing not to publicly post the vacancy. [Doc. 60-1 at 13, 15-16]; [Doc. 60-2 at 13]; [Doc. 60-4 at 6-7]. Shorter and Turner focused on three internal candidates, with Mitchell McCurry, the 34-year-old Head Girls Basketball Coach, emerging as a frontrunner. [Doc. 60-1 at 11]; [Doc. 60-2 at 9]; [Doc. 60-3 at 15]. McCurry, who had also served as an unofficial assistant to Tippett, was well-known to the boys' team, often helping with drills and scouting during practices. [Doc. 60-2 at 8]; [Doc. 60-3 at 8-10].

As the hiring process unfolded, a conversation outside the football field house raised questions about the decision-making. Tommie Dorris, a former LMSD band director, was chatting with Shorter and other coaches, including Coach Jones and Coach Sankster, when Shorter remarked that Billups was "too old" for the position and suggested he should "go home and retire". *See* Deposition of Tommie Dorris, attached as Exhibit "B" at p. 15, 17]. Dorris, then 60 years old, responded by asking if he, too, was too old for

his role, but Shorter brushed off the comment. *Id*. at p. 15.  This exchange occurred before McCurry's selection, as the school was still deliberating. *Id*. at p. 18.

Shorter and Turner ultimately recommended McCurry to Dr. Luke, citing his internal status, team familiarity, and coaching achievements. [Doc. 60-2 at 8]; [Doc. 60-4 at 8-10]. Luke presented the recommendation to the LMSD Board, which approved McCurry's appointment on May 9, 2023. [Doc. 60-4 at 10]. When other external candidates inquired about the position, Shorter informed them that resumes would only be accepted if the job was posted, which it never was. [Doc. 60-1 at 41–42].

When Billups learned of McCurry's hiring, he called Turner and pressed him for answers about the decision. [Doc. 60-2 at 14]. Turner perceived the tone as aggressive, recalling Billups' insistence that a Board member had urged his recommendation. *Id*. Dissatisfied, Billups filed a charge with the Equal Employment Opportunity Commission (EEOC) and received a Right to Sue letter on January 25, 2024. [Doc. 1-1]; [Doc. 1-2]. On April 19, 2024, he filed this lawsuit. *See generally* Doc. 1.

### III.   Legal Standard

District courts may properly grant summary judgment only if, viewing the facts in the light most favorable to the non-movant, the movant shows that there is no genuine issue of material fact, and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

Summary judgment shall only be rendered when the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett.*, 477

U.S. 317 (1986). The moving party bears the burden of identifying the basis for its belief that there is an absence of a genuine issue for trial and pointing out those portions of the record that demonstrate such an absence. *Id*. at 332.

Once the movant has made this initial showing, the nonmoving party must present competent summary judgment evidence to show a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Such evidence consists of specific facts that show a genuine fact issue, such that a reasonable jury might return a verdict in the nonmoving party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986). All evidence and the reasonable inferences to be drawn therefrom must be viewed in the light most favorable to the party opposing the motion. *Tolan v. Cotton,* 572 U.S. 650, 655, 660 (2014).

Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. *Liberty Lobby,* 477 U.S. at 255. Although the Court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 620 (5th Cir. 2013) (quoting *Brown v. Sudduth*, 675 F.3d 472, 477 (5th Cir. 2012)). That is, the Court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 151 (2000). In essence, though, the inquiry under summary judgment is the same as a judgment as a matter of law: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so

5

one-sided that one party must prevail as a matter of law. *Liberty Lobby,* 477 U.S. at 251-52.

Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. *Hampton v. Gannett Co.*, 296 F.Supp.2d 716, 719 (S.D. Miss. 2003). It is improper for the district court to "resolve factual disputes by weighing conflicting evidence… since it is the province of the jury to assess the probative value of the evidence." *Kennett-Murray Corp. v. Bone,* 622 F.2d 887, 892 (5th Cir. 1980). Summary judgment is also improper where the Court merely believes it unlikely that the non-moving party will prevail at trial. *National Screen Serv. Corp. v. Poster Exchange, Inc.*, 305 F.2d 647, 651 (5th Cir. 1962).

### IV.    Argument

The Court should deny Defendant Louisville Municipal School District's (LMSD) Motion for Summary Judgment because genuine disputes of material fact preclude judgment as a matter of law on Plaintiff Thomas Billups' Age Discrimination in Employment Act (ADEA) claim. Direct evidence of age-based animus, manifested through explicit statements by LMSD's Athletic Director Tyrone Shorter, demonstrates that age was a determinative factor in LMSD's decision not to hire Billups for the Head Boys Basketball Coach position at Louisville High School. Alternatively, even absent direct evidence, Billups satisfies the *McDonnell Douglas* framework by establishing a *prima facie* case of age discrimination, rebutting LMSD's proffered legitimate, non-discriminatory reasons, and showing that those reasons are pretextual, with age as the "but-for" cause of his non-selection. Under Federal Rule of Civil Procedure 56, the Court

must view all evidence in the light most favorable to Billups, the non-moving party, and draw all reasonable inferences in his favor, making summary judgment inappropriate. Fed. R. Civ. P. 56(a).

### A. Direct Evidence of Age Discrimination Precludes Summary Judgment

Direct evidence of age discrimination, in the form of explicit statements by Athletic Director Tyrone Shorter that Billups was "too old" for the Head Boys Basketball Coach position, creates a genuine dispute of material fact sufficient to defeat summary judgment. In the Fifth Circuit, direct evidence is defined as evidence which, if believed, proves the fact of discrimination without inference or presumption. *Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993). Shorter's statements, as recounted in the deposition of Coach Tommie Dorris, meet this stringent standard and establish that age-based animus influenced LMSD's hiring decision. Such evidence, however, was not included in the record in Defendant's Motion for Summary Judgment, despite initiating the deposition of Mr. Dorris themselves. [Doc. 60]; [Doc. 61]. In fact, out of the six depositions taken, Defendant attached every single deposition except for Mr. Dorris' deposition containing direct evidence. [Doc. 60]; [Doc. 61].

Coach Dorris testified that during a conversation about the Head Boys Basketball Coach vacancy in spring 2023, he asked Shorter why LMSD was not considering Billups, to which Shorter responded, "No. I think he's too old." When pressed, Shorter elaborated, "Well, he's old. I mean, he needs to perhaps go home and retire." *See* Exhibit "B", Deposition of Tommie Dorris, at p. 15. These remarks directly link Billups' age, which was approximately 70 at the time of his application, as inferred from his extensive coaching history and Shorter's comments, to the decision not to hire him. *Id.*;

[Doc. 60-5 at p. 40]. Shorter's role as Athletic Director, a key decisionmaker who recommended Mitchell McCurry for the position, underscores the significance of his statements. [Doc. 60-1 at p. 6]; [Doc. 60-2 at p. 17]. As the individual responsible for overseeing athletic hiring and coordinating with Principal Turner, Shorter's authority in the hiring process is undisputed. His explicit reference to Billups' age as a reason to exclude him from consideration proves discriminatory intent without requiring inference, satisfying the Fifth Circuit's criteria for direct evidence.

LMSD is likely to argue that Shorter's statements are "stray remarks" insufficient to constitute direct evidence, relying on cases like *Jackson v. Cal-W. Packaging Corp.*, which requires that comments be 1) related to the protected class of persons of which the plaintiff is a member; 2) proximate in time to the complained-of adverse employment decision; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue. 602 F.3d 374, 380 (5th Cir. 2010).

Shorter's position as Athletic Director establishes him as a decisionmaker with direct influence over the hiring process, as he recommended McCurry and communicated with Turner about candidates. [Doc. 60-1 at p. 6]; [Doc. 60-2 at p. 17]. Second, the temporal proximity of Shorter's remarks to the hiring process supports their relevance. The comments were made during discussions about the job vacancy in Spring 2023, contemporaneous with the candidate evaluations and hiring decision in May 2023. *See* Exhibit "B" at p. 15. The Fifth Circuit has found comments to be sufficiently proximate even when the exact timing is unclear, so long as they were part of a "routine" or ongoing practice. *Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 778 F.3d 473, 476 (5th Cir. 2015). In *Etienne*, the Court found statements that were made on several

occasions to be direct evidence, even without specific dates that the comments were made. *Id.* at 476.

Third, Shorter's statements were directly related to the employment decision not to hire Billups, as they were made in response to a specific inquiry about his candidacy for the Head Boys Basketball Coach position. This is a crucial nexus. In *Etienne*, the court found a general manager's comments that an employee was "too black to do various tasks at the casino" to be direct evidence because they were "related to the challenged employment decision" and a required part of the job. *Etienne*, 778 F.3d at 476. This stands in stark contrast to the remarks in *Jackson*, which the court found were "wholly unrelated" to the plaintiff's termination for a policy violation. *Jackson*, 602 F.3d at 380.

Fourth, the substantive content of Shorter's remarks, which explicitly stated that Billups was "too old" and should "retire", is neither vague nor ambiguous, directly invoking age as a disqualifying factor. *See* Exhibit "B" at p. 15. In *Etienne*, the court found similar comments to be direct evidence because they clearly and explicitly indicated that a decision-maker used a protected characteristic as a factor in an employment decision. *Etienne*, 778 F.3d at 476-77. This is the very definition of direct evidence and satisfies the core legal principle that no inference or presumption is required to link the statement to the discriminatory motive. For these reasons, the comments should be considered direct evidence of age discrimination, sufficient to defeat a motion for summary judgment.

LMSD may further contend that Shorter's comments reflect a subjective opinion rather than a definitive hiring rationale, or that they were isolated and not reflective of the broader decision-making process. However, the Fifth Circuit has noted that

comments by a decision-maker that explicitly invoke a protected characteristic are direct evidence of discrimination. *Id.* at 476. In *Etienne*, the court found that a general manager's statements that an employee was "too black to do various tasks" were direct evidence of a discriminatory motive. *Id.* at 476. The court noted that these statements, made by an individual with authority over the hiring decision, proved "without inference or presumption" that "race was a basis in employment decisions". *Id.* Shorter's remarks were not offhand; they were made in direct response to a question about Billups' candidacy and reiterated when challenged, indicating a considered position. Exhibit "B" at p. 15. Moreover, the context of the hiring decision in which LMSD overlooked a highly qualified candidate with significant community support in favor of a substantially younger, less experienced coach, bolsters the inference that Shorter's bias influenced the outcome. The direct evidence that Billups was not considered for the position due to his age, combined with evidence of his qualifications, is enough to create a genuine issue for trial, precluding summary judgment.

Additional evidence reinforces the probative value of Shorter's statements. Plaintiff's contemporaneous accusation of age discrimination during a phone call with Principal Turner, shortly after learning he was not hired, suggests that he perceived age bias at the time, aligning with Shorter's expressed views. [Doc. 60-2 at p. 14]; [Doc. 60-5 at p. 41-43]. Furthermore, the community group Trojans 4 Life actively advocated for Billups, meeting with Turner to support his candidacy, and Dorris testified that "everybody" in the community believed Billups' coaching history and local ties made him an ideal candidate. [Doc. 60-2 at p. 21]; Exhibit "B" at p. 12. LMSD's decision to ignore this support and reject Billups, a 70-year-old coaching legend, in favor of 34-year-old

Mitchell McCurry, whose experience pales in comparison, is anomalous and suggestive of age-based animus. Therefore, a reasonable jury could find that Shorter's explicit age-based statements, combined with these circumstances, prove LMSD's discriminatory intent, precluding summary judgment.

### B. Even Absent Direct Evidence, Plaintiff Meets His Burden Under the *McDonnell Douglas* Framework

If the Court determines that Athletic Director Tyrone Shorter's statements do not constitute direct evidence, Plaintiff Thomas Billups nonetheless defeats summary judgment by satisfying the *McDonnell Douglas* framework for circumstantial evidence of age discrimination. Under this framework, Billups must first establish a prima facie case of age discrimination, after which the burden shifts to Defendant Louisville Municipal School District (LMSD) to articulate legitimate, non-discriminatory reasons for its decision. If LMSD does so, Billups must demonstrate that those reasons are pretextual and that age was the "but-for" cause of his non-selection. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009). Billups meets each of these requirements, creating genuine disputes of material fact that warrant denial of summary judgment.

#### 1. *Prima Facie* Case

To establish a *prima facie* case under the ADEA in the context of hiring practices, Billups must show that he was within the protected class of individuals aged 40 or older, that he applied for and was qualified for a position for which LMSD was seeking applicants, that he was rejected, and that a another applicant not belonging to the protected class was hired. *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 680-81 (5th Cir. 2001).

Billups, approximately 70 years old at the time of his application in April 2023, clearly falls within the ADEA's protected class, a fact LMSD does not dispute. [Doc. 60-1 at p. 25]. His qualifications for the Head Boys Basketball Coach position are equally undisputed, as evidenced by his over 25 years of coaching experience, multiple state championships at Lanier High School, three consecutive conference championships at Tougaloo College, and prior tenure at Louisville High School, where he earned a legendary reputation. *See* Exhibit "B" at p. 11; [Doc. 60-5 at p. 9-22]; [Doc. 60-6 at p. 5-10]; [Doc. 60-1 at p. 16-17]. Billups applied for the position by submitting an online application through LMSD's Applitrack system on April 8, 2023, specifying a coaching position, and hand-delivering a resume and application packet to Principal Danya Turner's office, actions confirmed by both Billups and Turner. [Doc. 60-6 at p. 5-16]; [Doc. 61-5 at p. 27-28]; [Doc. 60-2 at p. 13]. Billups further expressed his interest directly to Turner during a visit to ensure his application was received, reinforcing his intent to apply for the coaching vacancy. [Doc. 60-2 at p. 13]; [Doc. 60-5 at p. 27].

Defendant argues in its Motion for Summary Judgment that Billups did not apply for the specific Head Boys Basketball Coach position, submitting only an invalid, general application for a coaching role, and that the position was not open to external applicants due to its internal hiring policy. [Doc. 61 at 8-9]. This position differs in emphasis from LMSD's EEOC Position Statement, which raises questions about the completeness of its response to a federal agency. In its November 20, 2023, EEOC Position Statement, LMSD stated that "no vacancy was declared as the High School Principal and Athletic Director identified an internal candidate to fulfill the position," focusing exclusively on the

internal hiring process without mentioning Billups' application. *See Defendant's EEOC Position Statement*, attached as Exhibit "C", at 1.

LMSD further noted that Principal Turner and Athletic Director Shorter reviewed internal candidates before considering external applicants. *Id.* at 2. While consistent with the Motion's claim that the position was not open to external applicants, the Position Statement's silence on Plaintiff's application contrasts with the Motion's acknowledgment that Billups delivered an application to Turner's secretary and later called Turner about the hiring decision. [Doc. 61 at 5]. This difference in detail could suggest that LMSD's EEOC response omitted relevant information about Billups' interest, potentially affecting the transparency of its position, potentially violating 18 U.S.C. § 1001, which prohibits knowingly false statements to federal agencies. *See Brogan v. United States*, 522 U.S. 398, 402-403 (1998) (holding that 18 U.S.C. § 1001 covers any false statement, including a simple denial of wrongdoing to a federal investigator, and rejects the 'exculpatory no' doctrine).

Billups' general coaching application, submitted shortly after learning of the vacancy through the community group Trojans 4 Life, is sufficient given the informal nature of LMSD's hiring process. [Doc. 60-5 at p. 26-28]. The LMSD Personnel Handbook does not explicitly require applications to specify the exact position, stating only that a completed Applitrack application and certain documents (transcripts, Praxis scores if required, and a professional license) are needed for validity, but it does not mandate disqualification of incomplete applications. [Doc. 60-7 at p. 12]; [Doc. 60-6 at p. 1]. Turner's acceptance of Plaintiff's resume and application packet without objection, coupled with their discussion about the vacancy, indicates LMSD treated the application

13

as valid. [Doc. 60-2 at p. 12-14]; [Doc. 60-5 at p. 26-30]. Courts have recognized that informal applications suffice when an employer's hiring process lacks strict formalities or when vacancies are learned through alternative channels. *EEOC v. Metal Serv. Co.*, 892 F.2d 341, 348 (3d Cir. 1990); *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 365-66 (1977).

Moreover, evidence suggests LMSD was *de facto* seeking applicants, despite their internal policy claim. The community's awareness of the vacancy, facilitated by Trojans 4 Life's encouragement of Billups and their advocacy to LMSD officials, further supports the inference that the position was open to external applicants. [Doc. 60-5 at p. 26]; Exhibit "B" at p. 12. The handbook's requirement that vacancies be advertised on the district's website with "pertinent information concerning anticipated vacancies" and that "all candidates" be considered based on qualifications contradicts LMSD's assertion of an internal-only process. [Doc. 60-7 at p. 11].

Billups was undeniably rejected, as he was neither interviewed nor hired, a fact LMSD does not dispute. [Doc. 60-2 at p. 15]; [Doc. 60-5 at p. 40]; [Doc. 61 at p. 7]. Finally, LMSD hired Mitchell McCurry, aged 34, who is substantially younger and outside the ADEA's protected class, satisfying the final element. [Doc. 61 at p. 1]; [Doc. 60-1 at p. 10-13]. Thus, Billups establishes a *prima facie* case, creating a presumption of age discrimination.

### 2. Defendant's Proffered Reasons Are Disputed and Contradictory

LMSD offers two primary legitimate, non-discriminatory reasons for not hiring Billups: first, that it only considered internal candidates pursuant to its hiring policy, and second,

that McCurry was the most qualified candidate based on his internal status, coaching success with the girls' team, and relationships with the boys' team. [Doc. 61 at p. 10-14].

Plaintiff presents substantial evidence creating genuine disputes about the veracity and application of these reasons, particularly the internal hiring policy, which appears to be selectively applied to exclude him. The contradictions within LMSD's decision-makers' testimonies, between their EEOC Position Statement and litigation claims, and in their handling of evidence further undermine their credibility, suggesting these reasons are pretextual.

### a.  Misleading EEOC Representations and Contradictory Litigation Stance

Defendant argues in its Motion for Summary Judgment that Plaintiff did not apply for the specific Head Boys Basketball Coach position, submitting only an invalid, general application for a coaching role, and that his candidacy was not formally considered due to an internal hiring policy. [Doc. 61 at 7-9]. However, differences between LMSD's EEOC Position Statement and its litigation stance, combined with discovery evidence, raise questions about the consistency of LMSD's representations, potentially supporting an inference of pretext under the ADEA. In its November 20, 2023, EEOC Position Statement, LMSD stated that "no vacancy was declared as the High School Principal and Athletic Director identified an internal candidate to fulfill the position," emphasizing an internal hiring process without mentioning Billups' application. *See* Exhibit "C" at 1. While consistent with the Motion's claim that the position was not open to external applicants, the Position Statement's silence on Billups' application contrasts with discovery evidence indicating LMSD's awareness of his interest, as well as the Motion's

acknowledgment that Billups delivered an application to Principal Turner's secretary and later called Turner about the hiring decision. [Doc. 61 at 5].

Discovery evidence further supports that LMSD was aware of Plaintiff's interest. Billups submitted an Applitrack application and hand-delivered a resume to Turner, who discussed the vacancy with him. [Doc. 60-6 at 5-16]; [Doc. 60-2 at 12-13]. Athletic Director Tyrone Shorter also confirmed Billups' interest, noting that Billups sent a resume and called to express interest in the job. [Doc. 60-1 at 17]. Additionally, the LMSD personnel handbook's application requirements, which allow flexibility in the submission process, undermine LMSD's claim that Billups' application was invalid. [Doc. 60-7 at 12]. Defendant further asserts that Plaintiff's Mississippi Department of Education teaching license was expired, rendering him ineligible for the position. [Doc. 61 at 8]. However, the EEOC Position Statement makes no mention of an expired license as a reason for Plaintiff's non-selection. *See* Exhibit "C" at 1-3. Discovery evidence shows Plaintiff's teaching license was valid as of April 17, 2023, nine days after his application submission and well before LMSD's hiring decision on May 9, 2023. [Doc. 60-6 at 8]. Plaintiff attests that renewing his license was a quick process, completed in days, contradicting Shorter's claim that renewal would take a long time. [Doc. 60-6 at 8]; [Doc. 60-1 at 18].

Moreover, Shorter's deposition testimony alleges that Plaintiff displayed an aggressive coaching style, including laying hands on players, as a basis for not selecting him. [Doc. 61 at 9]; [Doc. 60-1 at 35-36]. This rationale is absent from the EEOC Position Statement, which focuses solely on the internal hiring process and McCurry's qualifications. *See* Exhibit "C" at 1-3. Plaintiff denies these allegations,

stating his coaching style is disciplined but supportive, focusing on player development through encouragement and strategic instruction, and he has never engaged in harmful or aggressive physical contact with players. [Doc. 60-6 at 12]. His decades-long career, marked by player success and community respect, refutes these claims. [Doc. 60-6 at 3, 12]. No corroborating evidence, such as player or witness statements, supports Shorter's allegations, rendering them self-serving and uncorroborated.

The introduction of the license and aggression rationales in litigation, absent from the EEOC Position Statement, suggests these are post-hoc, self-serving justifications to bolster Defendant's position. These inconsistencies between LMSD's EEOC Position Statement and the litigation record, which acknowledges Plaintiff's interactions and application, may suggest a lack of transparency in LMSD's representations. In *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, the Fifth Circuit held that shifting or inconsistent explanations between administrative proceedings and litigation can be evidence of pretext, as they undermine the employer's credibility. 482 F.3d 408, 413 (5th Cir. 2007). These discrepancies create a genuine dispute of material fact regarding LMSD's reasons for not considering Billups, supporting an inference of pretext in his ADEA claim.

### b.  Inconsistent Application of Internal Hiring Policy

LMSD asserts that its standard policy is to prioritize internal candidates to retain qualified personnel, build leadership within schools, and promote internal growth, and that the Head Boys Basketball Coach position was filled internally without soliciting external applications. [Doc. 61 at p. 10-11]; Exhibit "C" at p. 1. However, the LMSD Personnel Handbook does not support this claim, lacking any explicit mandate for

17

internal-only hiring or prohibition on external consideration before posting vacancies. [Doc. 60-7 at p. 11-12]. The handbook's "Announcement of Vacancies" section states that when a vacancy is declared, it is advertised on the district's website with "pertinent information concerning anticipated vacancies, the district's application procedure, and the location where applications may be secured," and that "all candidates shall be considered on the basis of the needs of the district and their merits and qualifications." [Doc. 60-7 at p. 11]. This inclusive language suggests an open process, contradicting LMSD's assertion of a strict internal policy.

The handbook's "Employment Procedure" section outlines a process where administrators review applications from Applitrack or the Central Office but does not prioritize internal candidates or exclude external ones, indicating discretion in hiring practices. [Doc. 60-7 at p. 12]. Superintendent Dr. David Luke's uncertainty about whether the internal hiring policy is written, admitting, "I just don't know how the verbiage is actually written," undermines its enforceability and consistency. [Doc. 60-4 at p. 13-14]. Luke described the policy as a preference to "look inside that school" or district before going external, but his vagueness could allow a reasonable jury that it is not a formal rule. [Doc. 60-4 at p. 6]. In *Goudeau*, the Fifth Circuit found that a genuine issue of material fact as to pretext existed when the employer's stated reason for termination was undermined by evidence that the policy was not followed. *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 477 (5th Cir. 2015).

Additional evidence reinforces the policy's inconsistent application. The vacancy's public exposure through Tippett's social media post and Trojans 4 Life's advocacy further undermines the internal-only assertion. [Doc. 60-1 at p. 41]; [Doc. 60-5 at p. 26-

18

29]; Exhibit "B" at p. 12. Community members, including Trojans 4 Life, met with Turner and discussed Billups' candidacy with board members, and were told that the best candidate was going to be selected. [Doc. 60-1 at p. 42]; [Doc. 60-5 at p. 26-29]; [Doc. 60-2 at p. 15-16]; [Doc. 60-4 at p. 11]. Here, Defendant had all the opportunity in the world to indicate that Billups was not in the running because he was an external candidate; however, they were only told that the best one would be selected. The handbook's public advertisement requirement aligns with this awareness, allowing a reasonable jury to conclude that LMSD deviated from its own procedures. [Doc. 60-7 at p. 11-12]. Turner's acceptance of Plaintiff's resume and their discussion suggest his candidacy was considered, despite the internal policy claim. [Doc. 60-2 at p. 12-14]; [Doc. 60-5 at p. 26-29].

Shorter's deposition reveals an internal contradiction: he initially stated that two internal assistant coaches were to be interviewed, suggesting a competitive process, but later admitted only McCurry was interviewed after Coach Devron Cheatham withdrew. [Doc. 60-1 at p. 11-12]. This shift undermines LMSD's claim of a thorough internal review, allowing a reasonable jury to conclude that there was a predetermined selection. [Doc. 61 at p. 3]. The handbook's lack of an Applitrack-only requirement and Turner's failure to reject Plaintiff's application outright further indicates it was treated as valid. [Doc. 60-7 at p. 11-12]; [Doc. 60-2 at p. 12]. Trojans 4 Life's discussions with board members also suggest board-level awareness, conflicting with LMSD's internal administrative process claim. [Doc. 60-4 at p. 11]; Exhibit "B" at p. 12. The Fifth Circuit has held that deviations from company policies support an inference of pretext.

*Goudeau*, 793 F.3d at 477. These contradictions create a genuine dispute about whether the internal hiring policy was legitimate or a pretext to exclude Billups.

Generally, credibility determinations, weighing of evidence, and the drawing of legitimate inferences from the facts are for the jury. *Reeves,* 530 U.S. at 135. Moreover, the specific inquiry into whether a decision-maker had knowledge of relevant facts or obligations is a question for the jury when a conflict in substantial evidence exists.

Here, a reasonable jury could reject LMSD's claims about its internal hiring policy as unworthy of credence, given the substantial circumstantial evidence of inconsistencies and deviations. The absence of a written internal-only mandate in the LMSD Personnel Handbook, coupled with its inclusive language requiring public advertisement of vacancies and consideration of all candidates based on merit, directly undermines LMSD's assertion of a strict internal policy. [Doc. 60-7 at p. 11-12]. Dr. Luke's vague testimony about the policy's existence further weakens its credibility, as his admission that he is unsure of its written form suggests it is fabricated. [Doc. 60-4 at p. 13-14]. Furthermore, a jury is not obligated to accept LMSD's narrative when the handbook and Luke's testimony cast doubt on the policy's enforceability.

Further circumstantial evidence of inconsistent application strengthens the case for pretext. Shorter's willingness to entertain external candidates by instructing them to send resumes if the position was posted indicates flexibility in the hiring process, contradicting LMSD's claim of a rigid internal-only approach. [Doc. 60-1 at p. 42]. This openness suggests that LMSD decision-makers were not strictly bound by an internal policy, as Shorter's actions imply a potential for external consideration. The public exposure of the vacancy through Tippett's social media post and Trojans 4 Life's

20

advocacy further erodes LMSD's internal-only assertion, as it demonstrates widespread community awareness of the opening. [Doc. 60-1 at p. 41]; [Doc. 60-5 at p. 26-29]; Exhibit "B" at p. 12. Community members, including Trojans 4 Life, engaged directly with Turner and discussed Billups' candidacy with school board members, indicating external influence and knowledge at multiple levels of LMSD's hierarchy. [Doc. 60-1 at p. 42]; [Doc. 60-5 at p. 26-29]; [Doc. 60-2 at p. 15-16]; [Doc. 60-4 at p. 11]. This aligns with the handbook's requirement to advertise vacancies publicly, suggesting that LMSD's failure to post the position was a deviation from standard procedure. [Doc. 60-7 at p. 11-12]. Ultimately, circumstantial evidence of a decision-maker's knowledge, here, Turner's receipt of Billups' resume and interactions with community advocates, creates a jury question as to whether LMSD's stated rationale is truthful.

Turner's acceptance of Billups' resume and their subsequent discussion further indicate that Billups' candidacy was acknowledged, despite LMSD's claim that external applications were not considered. [Doc. 60-2 at p. 12-14]; [Doc. 60-5 at p. 26-29]. The handbook's lack of an Applitrack-only requirement and Turner's failure to reject Billups' application outright suggest that it was treated as valid, undermining LMSD's argument that Billups did not properly apply. [Doc. 60-7 at p. 11-12]; [Doc. 60-2 at p. 12]. Moreover, Shorter's deposition reveals internal contradictions in the selection process. He initially described a competitive process involving interviews with two internal assistant coaches, McCurry and Cheatham, but later admitted that only McCurry was interviewed after Cheatham withdrew, indicating a lack of thorough internal review. [Doc. 60-1 at p. 11-12]. This shift suggests a predetermined selection of McCurry, weakening LMSD's claim of a robust internal process. [Doc. 61 at p. 3].

The involvement of Trojans 4 Life and school board members further complicates LMSD's internal-only narrative. Discussions between Trojans 4 Life and board members about Billups' candidacy indicate board-level awareness, conflicting with LMSD's assertion that the hiring decision was confined to internal administrative processes. [Doc. 60-4 at p. 11]; Exhibit "B" at p. 12. This external engagement, combined with the public nature of the vacancy, supports an inference that LMSD deviated from its own policies by not advertising the position, as required by the handbook. [Doc. 60-7 at p. 11-12]. Moreover, a jury is not required to accept LMSD's claim that the internal policy precluded consideration of Billups, particularly when circumstantial evidence, such as community advocacy, board discussions, and Turner's engagement with Billups, suggests that decision-makers were aware of his candidacy and the vacancy's public exposure. 238 F.3d at 681-682.

These contradictions and deviations create a genuine dispute of material fact about whether LMSD's internal hiring policy was a legitimate, non-discriminatory reason for not hiring Billups or a pretext for age discrimination. The Fifth Circuit has emphasized that "the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." *Reeves*, 530 U.S. at 147. The lack of a written internal-only policy, Luke's uncertain testimony, Shorter's openness to external candidates, the public nature of the vacancy, and the inconsistent internal selection process collectively provide "significant probative evidence" that LMSD's stated rationale is unworthy of credence. *Craft v. Par. of Jeff Davis*, No. 2:20-CV-00853, 2024 WL 666661 (W.D. La. Feb. 16, 2024) (citing *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990)). A jury could reasonably reject LMSD's

assertions about its internal policy, finding that the decision-makers' knowledge of Billups' application and the vacancy's public exposure undermines their claim of a strictly internal process. Accordingly, these issues warrant trial on the question of pretext, precluding summary judgment.

### c. McCurry's Qualifications Disputed and Contradictory Rationales

LMSD's second proffered reason, which is that McCurry was the most qualified candidate based on his internal status, winning a state championship with the girls basketball team, and overall relationships with the boys' team, is disputed by Plaintiff's superior qualifications and contradictory rationales among decision-makers. [Doc. 61 at p. 12-14]; [Doc. 60-1 at p. 13]; Exhibit "C" at p. 2.  Billups' resume includes over 25 years of coaching experience, multiple state championships at Lanier High School, three consecutive conference championships at Tougaloo College, and a "legendary" tenure at Louisville High School. Exhibit "B" at p. 11; [Doc. 60-5 at p. 9-22]; [Doc. 61 at 12]; [Doc. 60-1 at p. 9-14].  More impressively, Plaintiff coached Monta Ellis, a former Lanier student who went straight to the NBA after graduating from there. [Doc. 60-1 at p. 31].

In contrast, McCurry had approximately eight years of high school coaching experience and one state championship. [Doc. 61 at p. 12]; [Doc. 60-1 at p. 9-10]. Luke's testimony that the boys' team faced "stumbling blocks" under McCurry, while the girls' team maintained success, weakens LMSD's claim that McCurry was uniquely qualified for the boys' coaching role. [Doc. 60-4 at p. 10]. Community support for Billups, evidenced by Trojans 4 Life's meetings with Turner and Dorris's testimony that "everybody" believed Billups was a strong candidate due to his history and local ties,

underscores the implausibility of LMSD's preference for McCurry. Exhibit "B" at p. 12; [Doc. 60-2 at p. 16-17]. Whether the Plaintiff or the person selected had superior qualifications sometimes will be deemed to create a genuine issue of material fact as to whether unlawful discrimination was the real reason plaintiff was not selected for the position. *Durley v. APAC, Inc.*, 236 F.3d 651, 657, 84 FEP 1177 (11th Cir. 2000) (summary judgment for employer reversed because rejected candidate possessed relevant experience that selected candidate did not).

A significant contradiction arises from Shorter's claim that Billups was not considered because his teaching license had expired, a requirement for the coaching position tied to a teaching role. [Doc. 60-1 at p. 18, p. 29]. This reason is absent from the EEOC Position Statement and Luke's deposition, suggesting it was not a primary factor. *See generally* Exhibit "C"; [Doc. 60-4]. Luke discussed McCurry's qualifications and community pressure but never mentioned a license, or Plaintiff's expired license. [Doc. 60-4 at p. 10-13]. Moreover, LMSD's records show Plaintiff's Mississippi Department of Education license was issued on April 17, 2023, nine days after his application, potentially resolving the issue before the May 9, 2023, hiring decision. [Doc. 60-6 at p. 15-16]; Exhibit "C" at 2. In *Burrell*, uncorroborated or shifting reasons among decision-makers were strong evidence of pretext. 482 F.3d at 412.

LMSD's failure to compare McCurry's credentials to Plaintiff's, despite receiving his resume, further contradicts their qualifications rationale. Turner and Shorter admitted not reviewing Billups' resume. [Doc. 60-2 at p. 12]; [Doc. 60-1 at p. 18]. Such contradictions, including Shorter's uncorroborated license claim, Luke's admission of

McCurry's struggles, and the lack of comparison, create a genuine dispute about McCurry's selection as the clearly better qualified candidate.

### 3. Pretext and Age as the But-For Cause

To establish pretext under the *McDonnell Douglas* framework, Billups must demonstrate that LMSD's internal-only hiring policy is false or unworthy of credence and that he was not selected because of his age. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). The Fifth Circuit recognizes that inconsistent or shifting explanations for an employment decision can support a finding of pretext. *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 412 (5th Cir. 2007). LMSD's contradictory handling of community advocacy, misleading EEOC representations, inconsistent application of its hiring policy, inconsistent license reasoning, dismissal of Billups' qualifications, and Shorter's ageist remarks collectively allow a reasonable jury to conclude that age discrimination drove the decision.

Shorter's statements that Billups was "too old" and should "retire" are highly probative of pretext, reflecting age-based animus by a key decision-maker. *See* Exhibit "B" at p. 15. The Fifth Circuit has held that such remarks, when paired with circumstantial evidence, strongly support a finding of pretext if they show 1) discriminatory animus 2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decisionmaker. *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 475–76 (5th Cir. 2015). The significant age gap between Billups, approximately 70, and McCurry, 34, coupled with Billups' superior qualifications, further raises an inference of age discrimination. The Supreme Court has noted that selecting a substantially younger,

less qualified candidate can indicate bias. *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 310-313 (1996). LMSD's failure to follow up with Billups after receiving his application, despite his direct engagement with Turner and strong community support, suggests deliberate exclusion inconsistent with its stated policy. *See* Exhibit "B" at p. 12; [Doc. 60-2 at p. 14, 16–17]. Billups' contemporaneous accusation of age discrimination to Turner, made shortly after his rejection, reinforces that age was a motivating factor. [Doc. 60-2 at p. 14]; [Doc. 60-5 at p. 26–27, 30, 43–44].

LMSD's handling of community advocacy for Billups further erodes its credibility. Luke testified he received "persuasive language" about Billups' "legend status" but did not engage with Trojans 4 Life or Billups. [Doc. 60-4 at pp. 11–12]. Turner described a formal meeting with five Trojans 4 Life members, promising the "best person" would be selected, implying openness to considering Billups despite the alleged internal-only policy. [Doc. 60-2 at pp. 16–17]. Shorter acknowledged meeting advocates and being open to resumes, suggesting flexibility toward external candidates. [Doc. 60-1 at p. 19]. These divergent responses contradict LMSD's claim of a "unified internal process." [Doc. 61 at p. 10]. Turner's "best person" statement and Shorter's willingness to accept resumes also directly clash with the alleged internal-only policy. [Doc. 60-2 at p. 16]; [Doc. 60-1 at p. 19, Lines 8–10]. The Fifth Circuit has emphasized that such inconsistencies in handling external influences and deviations from stated procedures support pretext, as they suggest selective policy enforcement.

Additional irregularities strengthen the pretext claim. LMSD's misleading EEOC representations, uncorroborated claim about Plaintiff's coaching license, and reliance on a disputed narrative about restricting basketball players from football, which Billups

refuted, indicate fabricated rationales. [Doc. 60-5 at p. 52–55]; [Doc. 60-1 at p. 18, 30, 32]; [Doc. 60-2 at p. 21]. LMSD's web of contradictions, compounded by Shorter's ageist comments and the dismissal of Billups' qualifications, mirrors *Burrell*'s irregularities. The Supreme Court has clarified that false or misleading reasons can allow the trier of fact to infer the ultimate fact of discrimination. *Reeves*, 530 U.S. at 147. Viewed in the light most favorable to Billups, this cumulative evidence could lead a reasonable jury to conclude that LMSD's rationale is pretextual and that age was the but-for cause of his non-selection, warranting denial of summary judgment.

Under Supreme Court precedent, the factfinder's task is not to decide whether the employer's decision was correct or wise, but whether the stated reason was the real reason. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-151 (2000) (explaining that credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge). Tyrone Shorter's deposition testimony reveals a significant contradiction regarding the LMSD's hiring rationale for the Head Boys Basketball Coach position, particularly in relation to the emphasis on long-term stability and the consideration of Thomas Billups' age. Shorter initially testified that LMSD prioritizes hiring "quality coaches where we won't have that big turnover every year," underscoring the district's intent to secure stable, long-term candidates to minimize frequent coaching changes due to the transient nature of the profession. [Doc. 60-1 at p. 7]. He explicitly stated, coaches come and go, so what I do when I try to hire coaches, you know, I want to get quality coaches where we won't have that big turnover every year. [Doc. 60-1 at p. 7]. This testimony establishes that a key criterion in LMSD's hiring process was to select a coach who could provide

continuity and longevity to the basketball program, a reasonable priority given the disruptions caused by frequent turnover.

However, Shorter's testimony takes a contradictory turn when discussing why Thomas Billups, a candidate who expressed interest in the position, was not considered. [Doc. 60-1 at pp. 25–26]. On page 25, when asked if he had a suspicion that Billups, believed to be in his 70s, would not be a long-term coach, Shorter initially responds affirmatively, saying "Yes". [Doc. 60-1 at p. 25]. This admission suggests that Plaintiff's age was a factor in the hiring decision, as it led Shorter to question his potential for long-term commitment, directly aligning with the earlier emphasis on avoiding turnover. However, Shorter quickly appears to recognize the implications of his statement, as it could indicate age-based discrimination, and attempts to backtrack. On page 26, he retracts his earlier affirmation, stating that he didn't "say anything about I didn't believe that he wouldn't stay around long-term." [Doc. 60-1 at p. 26]. This abrupt reversal undermines the credibility of his testimony, as it suggests an attempt to obscure the role that age played in the hiring process after initially admitting its relevance.

Shorter's contradictory statements further erode the reliability of LMSD's stated rationale for not considering Billups. His initial acknowledgment that he suspected Billups would not be a long-term coach due to his age directly contradicts the subsequent claim that age was irrelevant, creating an impression of evasiveness or "gaslighting" in his testimony. [Doc. 60-1 at pp. 25–26]. This inconsistency is particularly probative of pretext, as it suggests that LMSD's decision to bypass Billups in favor of promoting Coach McCurry from within may have been influenced by impermissible factors, such as age, rather than solely the qualifications or strategic hiring practices

28

Shorter described. By first affirming and then denying the influence of Billups' age, Shorter's testimony raises doubts about the transparency and legitimacy of LMSD's hiring process, providing evidence that the district's rationale may not be as straightforward as claimed.

This contradiction is significant for several reasons. First, Shorter's initial emphasis on hiring for stability does not inherently exclude an older candidate like Billups, who could have been a long-term coach given his extensive experience and community support. His later assumption that Billups' age (approximately 70) disqualified him as a long-term candidate reflects an age-based stereotype rather than a reasoned assessment of Billups' qualifications or commitment. Second, Shorter's ageist remarks directly undermine his earlier claim of seeking a "quality coach" for stability, as they suggest that age, not qualifications, drove the decision to exclude Billups. A jury could reject Shorter's claim that LMSD sought a long-term coach as a pretextual justification, given the circumstantial evidence of his age-based animus and the lack of evidence that Billups was unwilling or unable to serve long-term. *Reeves,* 530 U.S. at 150-151.

Beyond Shorter's contradictions, LMSD's handling of community advocacy and procedural irregularities further erodes its credibility. Superintendent Dr. David Luke's testimony that he received "persuasive language" about Billups' "legend status" but took no action to engage with Trojans 4 Life or Billups suggests a deliberate dismissal of external support, inconsistent with the handbook's requirement to consider all candidates based on merit. [Doc. 60-4 at pp. 11–12]; [Doc. 60-7 at p. 11]. Principal Danya Turner's promise to Trojans 4 Life that the "best person" would be selected implies openness to external candidates, directly clashing with LMSD's alleged internal-

only policy. [Doc. 60-2 at pp. 16–17]. Shorter's acknowledgment of meeting advocates and his willingness to accept resumes from external candidates further contradicts the claim of a "unified internal process." [Doc. 60-1 at p. 19, Lines 8–10]. These divergent responses suggest selective enforcement of policies, supporting an inference of pretext. *See Leal v. McHugh*, 731 F.3d 405, 413 (5th Cir. 2013). The significant age gap between Billups (approximately 70) and McCurry (34), coupled with LMSD's dismissal of Billups' superior qualifications, further supports an inference of age discrimination. Billups' extensive coaching experience, community recognition as a "legend," and endorsements from Trojans 4 Life contrast with McCurry's relatively limited experience, despite his success with the girls' team. [Doc. 60-5 at p. 26–29]; [Doc. 60-4 at p. 11]. The Supreme Court in *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996), noted that selecting a substantially younger, less qualified candidate can indicate age-based bias.

LMSD's misleading representations to the EEOC, uncorroborated claim about Billups' coaching license, and reliance on a disputed narrative about restricting basketball players from football, which Billups refuted, indicate fabricated or post-hoc rationales. [Doc. 60-5 at p. 52–55]; [Doc. 60-1 at p. 18, 30, 32]; [Doc. 60-2 at p. 21]. For example, Shorter's claim that Billups lacked a valid license at the time of application is undermined by evidence that his license was issued on April 17, 2023, shortly after his April 8 application, and LMSD never verified this before dismissing his candidacy. [Doc. 60-5 at p. 56]; [Doc. 60-1 at p. 18]. In *Reeves*, the Supreme Court held that false or misleading reasons can sustain a finding of discrimination, as they suggest an employer's attempt to conceal its true motives. *Reeves,* 530 U.S. at 150-151. Similarly,

LMSD's reliance on unverified or disputed rationales mirrors the irregularities in *Burrell*, where the Fifth Circuit found that fabricated justifications supported pretext. 482 F.3d at 412–15. Billups' contemporaneous accusation of age discrimination to Turner, made shortly after his rejection, reinforces the perception that age was a motivating factor, as it reflects his immediate belief that age drove the decision. [Doc. 60-2 at p. 14]; [Doc. 60-5 at p. 26–27, 30, 43–44].

The cumulative circumstantial evidence, including Shorter's contradictory statements about seeking a long-term coach, his ageist remarks, procedural irregularities, misleading rationales, and the dismissal of Billups' qualifications, creates a jury question as to whether LMSD's internal-only policy and other stated reasons were pretextual. Under *Reeves*, a jury is not required to accept LMSD's rationales when such evidence suggests that decision-makers acted with knowledge of Billups' application and the ADEA's protections, as credibility determinations should be left to the jury. 530 U.S. at 150. Courts have emphasized that the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. *Reeves*, 530 U.S. at 150. The additional irregularities, including LMSD's handling of community advocacy, unverified license claims, and failure to adhere to the handbook's merit-based hiring requirements, provide "significant probative evidence" that LMSD's rationale is unworthy of credence. *Craft v. Par. of Jeff Davis,* No. 2:20-CV-00853, 2024 WL 666661 (W.D. La. Feb. 16, 2024). A jury could reasonably conclude that these inconsistencies, compounded by Shorter's explicit ageist comments, demonstrate that age was the but-for cause of Billups' non-selection, as required under the ADEA.

Accordingly, these issues preclude summary judgment and warrant trial on the question of pretext and discrimination.

## V.    Conclusion

For the foregoing reasons, the Court should deny Defendant Louisville Municipal School District's Motion for Summary Judgment. Plaintiff Thomas Billups has presented compelling direct evidence of age discrimination through Athletic Director Tyrone Shorter's explicit statements that Billups was "too old" and should "retire," which, if believed, prove that age was a determinative factor in LMSD's decision not to hire him for the Head Boys Basketball Coach position. Alternatively, under the *McDonnell Douglas* framework, Billups has established a *prima facie* case of age discrimination, rebutted LMSD's proffered legitimate, non-discriminatory reasons, and demonstrated that those reasons, such as reliance on an internal hiring policy and Mitchell McCurry's purported superior qualifications, are pretextual, with substantial evidence indicating that age was the but-for cause of his non-selection.

The record, viewed in the light most favorable to Billups, reveals genuine disputes of material fact regarding Shorter's age-based animus, the inconsistent application of LMSD's hiring policy, Billups' superior qualifications, and the credibility of LMSD's rationales. These disputes, supported by deposition testimony, community advocacy, and Billups' contemporaneous perception of bias, are properly resolved by a jury, not on summary judgment. Accordingly, Billups respectfully requests that the Court deny LMSD's motion and allow this case to proceed to trial, where a jury can fully evaluate the evidence of age discrimination under the Age Discrimination in Employment Act.

THIS, the 30th day of January, 2026.

32

Respectfully submitted,

By: */s/ Jim Waide*
    Jim Waide, MS Bar No. 6857
    Rachel Pierce Waide, MS Bar No. 100420
    Yance Falkner, MS Bar No. 106107
    WAIDE & ASSOCIATES, P.A.
    332 North Spring Street
    Tupelo, MS  38804-3955
    Post Office Box 1357
    Tupelo, MS  38802-1357
    Telephone:  (662) 842-7324
    Facsimile:  (662) 842-8056
    Email:   waide@waidelaw.com
            jdw@waidelaw.com
            rpierce@waidelaw.com
            yfalkner@waidelaw.com

    ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I, Jim Waide, attorney for Plaintiff, do hereby certify that I have this day served via ECF or by United States mail, postage prepaid, a true and correct copy of the above and foregoing document to all counsel of record:

SO CERTIFIED, this the 30th day of January, 2026.

    /s/ Jim Waide
    JIM WAIDE