**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**ABERDEEN DIVISION**

**THOMAS BILLUPS**                                                    **PLAINTIFF**

**v.**                                             **CIVIL ACTION NO.: 1:24-CV-74-SA-DAS**

**LOUISVILLE MUNICIPAL SCHOOL DISTRICT**                     **DEFENDANT**

**REPLY IN SUPPORT OF**
**DEFENDANT LOUISVILLE MUNICIPAL SCHOOL DISTRICT'S**
**MOTION FOR SUMMARY JUDGMENT**

COMES NOW, Defendant, Louisville Municipal School District, by and though counsel, and respectfully files this, its Reply in Support of its Motion for Summary Judgment, as follows:

**I.     REPLY**

Billups still fails to make an ADEA claim against LMSD for several reasons.  First, Billups cannot show that Shorter's alleged comment was direct evidence of discrimination and should be considered a stray remark.  Second, Billups cannot make a prima facie case of age discrimination because LMSD was not seeking applications for the position and he did not apply for the position.  Third, even if he could, LMSD had legitimate, non-discriminatory reasons for not interviewing/not hiring Billups in the head boys basketball coach position, and Billups cannot show that these proffered reasons were false or unworthy of credence, thereby failing to establish pretext.  For all of these reasons, summary judgment should be granted.

**II.    LAW AND DISCUSSION**

**A. Billups Fails to Meet His Burden to Prove Direct Discrimination.**

Billups cannot meet his burden to prove direct discrimination.  This is because the alleged comment from Tyrone Shorter that Billups was "too old" and "needed to retire" should be

considered a stray remark. Billups argues that such a comment from Shorter does not constitute a stray remark because it meets all the factors set forth to constitute direct discrimination.[1] This argument fails.

"'Direct evidence is rare' for discrimination claims."[2] Accordingly, the Court must apply a "'four-part test to determine whether [the remarks] are sufficient to overcome summary judgment.'"[3] "[T]he remarks must be '(1) related to the protected class of persons of which the plaintiff is a member; (2) proximate in time to the complained-of adverse employment decision; (3) made by an individual with authority over the employment decision at issue; and (4) related to the employment decision at issue.'"[4] Billups cannot meet the third-prong here.

Shorter, the Athletic Director, both legally and factually, did not have the authority over the employment decision at issue—that is—hiring Billups as the basketball coach. First, it is well-established in Mississippi, and accepted by federal courts, that the school board has the final authority to make employment decisions for the District.[5] Indeed, under Mississippi law, an

---

[1] **[Doc. 88]** at pgs. 8-11.

[2] *Coleman v. Chevron Philips Chem. Co.*, 2025 U.S. App. LEXIS 6676, at *4 (5th Cir. March 21, 2025) (quoting *Portis v. First Nat'l Bank of New Albany*, 34 F.3d 325, 328 (5th Cir. 1994)).

[3] *Id.* (quoting *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 581 (5th Cir. 2020)).

[4] *Id.* (quoting *Clark*, 952 F.3d at 581).

[5] *See Dearman v. Stone Cnty. Sch. Dist.*, 832 F.3d 577, 581 (5th Cir. 2016) ("Under Mississippi law, the School Board itself, and not Miller, is the 'official policy maker' for the School District with respect to personnel decisions."); *Papgolos v. Lafayette Cnty. Sch. Dist.*, 972 . Supp. 2d 912, 920 (N.D. Miss. 2013) ("[I]t is well established that school boards in Mississippi are vested with final authority for ultimate employment decisions . . . ."); *Watson v. N. Panola Sch. Dist.*, 188 Fed. Appx. 291, 294-95 (5th Cir. July 11, 2006) ("Mississippi law confers on a school board the authority 'to select all school district personnel in the manner provided by law.' While Mississippi law contemplates a role for a principal in the hiring of teachers, that role is limited to recommending candidates; the decision to approve a recommended candidate is left exclusively to the school board. Before a school district can enter into an employment contract with a teacher, that teacher must be 'elected and approved for employment by the school board.'") (internal citations omitted); *see also* Miss. Code Ann. 37-7-301(p) ("The school boards of all school districts shall have the following powers, authority, and duties . . . [t]o select all school district personnel in the manner provided by law[.]"); Miss Code Ann. § 37-9-17(1) ("[T]he principal of each school shall recommend to the superintendent of the local school district the licensed employees or noninstructional employees to be employed for the school involved . . . . If such recommendations meet with the approval of the superintendent, the superintendent shall recommend the employment of such licensed employees or noninstructional employees to the local school board, and, unless good reason to the contrary exists, the board shall elect the employees so

athletic director has no authority to even recommend candidates for employment decisions.[6] As such, the most that can be said of Shorter is that he participated in the discussion surrounding the hiring of the boys head basketball coach, but it is clear he did not have "authority over the employment decision at issue."[7]

Furthermore, this fact is established applying the undisputed facts of this case. It is undisputed that both Shorter and Turner first looked at internal applicants for the job of head boys basketball coach, which is congruent with the policies and customs at LMSD.[8] After they spoke with Coach McCurry, Shorter and Turner made their recommendation to Superintendent Luke that Coach McCurry be considered for the head coach job.[9] Superintendent Luke then submitted his recommendation to the Board.[10] On May 9, 2023, the LMSD Board of Trustees approved Superintendent Luke's recommendation and hired Coach McCurry as the Head Boys Basketball Coach.[11]

To the extent that Billups argues that merely being "involved" with the hiring decision is enough to clear the hurdle of factor three, he is incorrect. In *Simmons v. SAIA Motor Freight Line, L.L.C.*, the Fifth Circuit found that participation/discussion regarding an employment decision

---

recommended. If, for any reason, the local school board shall decline to elect any employee so recommended, additional recommendations for the places to be filled shall be made by the principal to the superintendent and then by the superintendent of the local school board as provided above."); Miss. Code Ann. § 37-9-23 (a superintendent shall enter into a contract with licensed employees who are "elected and approved for employment by the school board.").

[6] *See* Miss. Code Ann. § 37-9-17(1) ("*[T]he principal* of each school shall recommend to the superintendent of the local school district the licensed employees or noninstructional employees to be employed for the school involved . . . . If, for any reason, the local school board shall decline to elect any employee so recommended, additional recommendations for the places to be filled *shall be made by the principal to the superintendent* and then by the superintendent of the local school board as provided above.") (emphasis added).

[7] *Coleman*, 2025 U.S. App. LEXIS 6676, at *4 (quotations omitted).

[8] **[Doc. 60-1]** at pg. 7, lns. 7-12; **[Doc. 60-2]** at pg. 7, lns. 4-14; at pg. 11, ln. 19 – pg. 12, ln. 12; **[Doc. 60-4]** at pg. 6, lns. 9-11; **[Doc. 60-7]** at DEF 22-23.

[9] **[Doc. 60-2]** at pg. 8, lns. 1-4.

[10] **[Doc. 60-4]** at pg. 8, ln. 5 – pg. 10, ln. 9.

[11] **[Doc. 60-4]** at pg. 8, lns. 5-23; at pg. 10, lns. 19-21; Exhibit "A" – LMSD Board of Trustees' Official Minutes.

does not equate to having authority over making such decision.[12]  Indeed, the Fifth Circuit found

that "[a]t most, [the manager] can be said to have participated in the discussion about [the

plaintiff's] termination[;]" however, it was the HR Director—not the manager—that made the final

decision to terminate the plaintiff.[13]  Many other courts in this Circuit have found the same to be

true in a variety of employment contexts.[14]  Shorter's comment cannot be considered as direct

evidence of discrimination.

### B. Billups Fails to Make a *Prima Facie* ADEA Discrimination Claim.

Billips still fails to make a *prima facie* ADEA discrimination claim. To successfully make a

*prima facie* claim, Billups must show that "(1) he belongs to a protected class; (2) he applied for

and was qualified for a position that was seeking applicants; (3) he was rejected; and (4) following

---

[12] 751 Fed. Appx. 541, 545 (5th Cir. Nov. 14, 2018) (unpublished).

[13] *Id.*

[14] *See Fuller v. Panetta,* 459 Fed. Appx. 436, 438 (5th Cir. Jan. 31, 2012) (unpublished) (finding that a statement by the plaintiff's supervisor was a stray remark because "Field was Fuller's supervisor, but the parties do not dispute that the employment decision was entirely up to Hall.  The [district] court found the remark was nevertheless probative, because it was reasonable to infer that a hiring official would have some contact with an employee's direct supervisor.  Even if, however, Field and Hall had discussed Fuller's qualifications, mere contact does not mean that the remark becomes attributed to Hall.  Nor does contact with the person who had authority over the decision give Field authority over it.  The remark was plainly not '*made* by an individual with authority over the employment decision.'"); *Donnelly v. Acad. P'ship LLC,* 2023 U.S. Dist. LEXIS 104078, at *32-*33 (N.D. Tex. June 14, 2023) (finding that an "isolated comment" from the plaintiff's supervisor amounted to a stray remark because it was "from an employee who was not the decision maker[,]" and finding that such a comment was a stray remark because even though "the individual who allegedly made the remark, Salah Eid, was involved in the investigation into [the plaintiff's] disclosure of confidential information, it was Earl Frischkorn, AP's Senior Vice President of Enrollment & Retention Services who held authority over the employment decision, not Eid."); *Oldenburg v. Univ of Tex.,* 2020 U.S. Dist. LEXIS 109035, at *12-*13 (W.D. Tex. June 22, 2020) (holding that age based remarks were stray remarks because the speaker was not the ultimate decision-maker or a person with influence or leverage over the formal decision-maker explaining that "the ultimate decision-maker was DiMeo. While Carse [the speaker] participated in the hiring committee meeting after the second round of interviews, DiMeo made the ultimate decision to hire Trochio over Oldenburg during a meeting consisting of only four UT employees: DiMeo, Hanson, Pope, and Perrone."); *Harville v. Tex. A&M Univ.,* 833 F. Supp. 2d at 645, 655 (S.D. Tex. 2011) ("While Mortensen may have requested the plaintiff's termination on the department's behalf, he did just that: requested it.  Mortensen, acting alone, did not have the authority to terminate the plaintiff's employment.  Mortensen gave his proposed termination letter to Ryan, who in turn sought approval of the appropriate authorities.  Requesting a termination or condoning an adverse employment action does not equate to having the authority to execute these employment decisions unfettered.") (emphasis added).

4

his rejection, another applicant not of the protected class was hired."[15]  Billups still cannot show that (1) LMSD was seeking applicants for head coach job or (2) that he applied for the position.

Billups argues that he can make a *prima facie* case for several reasons.  Billups first argues that he is within the protected class and was qualified for the job—which LMSD does not dispute.[16]  Billups next argues that the "evidence suggests LMSD was *de facto* seeking applicants, despite their internal policy claim."[17]  Billups additionally argues that he did apply for the boys head coaching job through his incomplete and/or "informal" application, and that LMSD treated his application as valid.[18]  These arguments fail.

### 1.  LMSD Was Not Seeking Applicants for the Boys Head Coaching Job.

As stated in its position statement to the EEOC, LMSD was not seeking applications for the Boys Head Coaching job, and thus, Billups cannot make a *prima facie* case.   Billups argues that the "community's awareness of the vacancy, facilitated by Trojans 4 Life's encouragement of Billups and their advocacy to LMSD officials" supports an inference that the position was open to external applicants.[19]  But it does not. LMSD's employment policy is clear, and community awareness and advocacy for a position does not negate LMSD's employment policies.

As stated in its principal brief, it is undisputed that LMSD did not post or announce that the position was open.[20]  Billups himself testified that he only learned that Coach Tippett had resigned through his involvement with Trojans 4 Life—not from any official job announcement by LMSD

---

[15] *McDaniel*, 705 Fed. Appx. at 245 (citations omitted).
[16] *See* **[Doc. 61]** at Section IV.A (arguing that Billups cannot show LMSD was seeking applicants for the position or that he applied for the position.).
[17] **[Doc. 88]** at pg. 14.
[18] **[Doc. 88]** at pgs. 12-14.
[19] **[Doc. 88]** at pg. 14.
[20] **[Doc. 60-2]** at pg. 13, lns. 8-20; **[Doc. 60-1]** at pg. 15, ln. 24 – pg. 16, ln. 3.

or from anyone at LMSD.[21]  Additionally, when other non-employees called to inquire about the job, Coach Shorter informed them that when/if the job was opened to outside applicants, then a resume may be sent to LMSD to be considered.[22]  And these candidates only knew of a potential job opening due to a post on social media by Coach Tippett—not from LMSD.[23]  Further still, LMSD did not even seek applications from internal candidates they considered.[24]  There is no evidence, *at all*, that LMSD declared a vacancy for the head boys basketball coach position.

Further, LMSD Policies state that "[w]hen a vacancy *is declared* in the school district, the administrator overseeing the position must inform the superintendent in writing of the need."[25]  It goes on to explain that "the administrator overseeing the position must inform the superintendent in writing of the need[,]" and then a vacancy announcement is prepared.[26]  Further still, the policy states that "[o]nce a vacancy is *declared*, the announcement is advertised on the district's webpage providing pertinent information, the application procedure, and the location where application may be secured.[27]  Billups argues that this policy "contradicts LMSD's assertions of an internal-only process[,]" but it does not.  Billups fails to consider that LMSD must declare that there is a vacancy in the first place.[28]  There is simply no evidence that LMSD took any official action to declare a vacancy, requiring them to post the vacancy and accept/consider external applicants.[29]

In sum, there is no evidence that LMSD was seeking external applicants for the boys basketball

---

[21] **[Doc. 60-5]** at pg. 26, lns. 4-22.
[22] **[Doc. 60-1]** at pg. 41, ln. 22 – pg. 42, ln. 14.
[23] **[Doc. 60-1]** at pg. 41, lns. 15-22.
[24] **[Doc. 60-3]** at pg. 18, ln. 25 – pg. 19, ln. 10.
[25] **[Doc. 60-7]** at DEF 22.
[26] **[Doc. 60-7]** at DEF 22.
[27] **[Doc. 60-7]** at DEF 22.
[28] *See* **[Doc. 60-7]** at DEF 22.
[29] *Cf.* 1996 Miss. AG LEXIS 417 (Aug 30, 1996) (confirming that there is no legal requirement for school district to post vacancies and the posting of vacancies is a "policy matter left to the discretion of the local school board.").

6

head coaching job, and there is no legal requirement—per the Employee Handbook or from Mississippi statutes—that LMSD must consider external candidates when filling an open position. Indeed, if a plaintiff could establish that an employer was "seeking applicants" by simply expressing interest and providing a resume to an employer for a position that was not open and for which the employer was not seeking applications, it would render the *prima facie* analysis meaningless, and inundate this Court with discrimination lawsuits. Billups has failed to make a *prima facie* case of age-discrimination and summary judgment should be granted on this basis alone.[30]

### 2. Billups Did Not Apply for the Boys Head Coaching Job.

Even if this Court finds that LMSD was seeking applicants for the coaching job, which it should not, Billups still did not apply to be the Boys Basketball Head Coach. Again, to show a *prima facie* case, Billups must show that he actually applied for the job in question.[31] Billups did not do so.

Billups argues that (1) LMSD's assertion that Billups did not apply for the boys head coaching job suggests that LMSD somehow provided false information in its EEOC Position Statement and (2) that Billups did submit a complete application.[32] These arguments fail.

First, LMSD has maintained, both at the EEOC and throughout this litigation, that Billups could not have applied for the job of the boys basketball coach because the position was never

---

[30] *See Donnelly v. Acad. P'ship LLC*, 2023 U.S. Dist. LEXIS 104078, at *26 (N.D. Tex. June 14, 2023) ("AP made clear that it would fill some of the new Senior Manager positions using placement (rather than with applications and interviews) by employees who met the requirements and that it would post future Senior Manager positions for applications and interviews. AP created and filled three Senior Manager positions without taking applications, so Johnson could not have applied and does not claim she did. Thus, Johnson cannot establish a prima facie failure-to-promote case because she cannot show that she 'applied . . . for a job for which her employer was seeking applicants.'").
[31] *See McDaniel*, 705 Fed. Appx. at 245 (citations omitted).
[32] **[Doc. 88]** at pgs. 11-14.

available to external applicants.[33]  Additionally, the Fifth Circuit has found that attorneys may give supplemental or additional reasons for the employment action—these reasons just may not be inconsistent with the EEOC statement.[34]  The additional reasons given by LMSD are not inconsistent with the reasons given to the EEOC, and Billups does not point to any inconsistencies.[35]  The reasons given by LMSD here are supplemental and additional and do not indicate that LMSD was untruthful to the EEOC.

Next, Billups argues that his general and incomplete application was sufficient to show that he "applied" to the head coaching position.[36]  Billups supports this argument stating that his general application is sufficient due to LMSD's "informal" hiring process, the policy does not mandate disqualifications of incomplete applications, and Turner's acceptance of the resume indicates the application was valid.[37] Not so.

First, it is undisputed by Billups that he only submitted a general coaching application[38] and that his application was incomplete.[39]  Second, as stated many times, the boys basketball coaching job was never opened to external applicants, as such, Billups could not have applied for the job.[40]

---

[33] *See* Exhibit "B" – LMSD Position Statement; **[Doc. 64-3]** (LMSD response to November 6, 2023 request for information); and **[Doc. 62]** at pg. 7 ("Billups cannot make a prima facie case . . . because it is undisputed that LMSD was not seeking applicants . . . ."); at pgs. 8-9 ("As stated above, the boys basketball coaching job was never opened to external applicants, as such, Billups could not have applied for the job.").

[34] *See Bennett v. Consol. Gravity Drainage Dist. No. 1,* 648 Fed. Appx. 425, 431 (5th Cir. 2016) ("More importantly, the three reasons given to the district court are not actually inconsistent with the reason given to the EEOC.  Rather, the first reason . . . is identical to the explanation given in the position statement, and the other two reasons do not contradict what was told to the EEOC.").

[35] **[Doc. 88]** at pgs. 11-13.

[36] **[Doc. 88]** at pgs. 13-14

[37] **[Doc. 88]** at pgs. 13-14.

[38] In his extremely general application, Billups does not indicate *anywhere* that he is seeking the boys' head basketball coaching job at Louisville High School, despite having multiple opportunities to set forth these wishes. *See* **[Doc. 60-6]**.

[39] **[Doc. 88]** at pg. 13 ("Billups's general 'coaching' application . . . ."); at *id.*(arguing that although the policy requires a completed application and certain documents to be deemed valid, it does not mandate disqualification of *incomplete applications*.).

[40] *See Donnelly,* 2023 U.S. Dist. LEXIS 104078, at *26 ("AP created and filled three Senior Manager positions without taking applications, so Johnson could not have applied and does not claim she did.  Thus, Johnson cannot

8

As to Billups's claims that LMSD's hiring policy was "informal," it was not. LMSD has a very clearly established vacancy and hiring policy for those external applicants seeking employment within the District.[41] As to Billups' claim that LMSD's policy "does not mandate disqualification of incomplete applications[,]" that is also false.

In the personnel handbook as to certified-personnel, LMSD states "[i]n order for an application to be valid, a completed application on Applitrack and the following uploaded documents must be present: (a) copy of college/university transcript(s), (b) copy of Praxis scores if required for certification, (c) valid copy of the applicant's professional license issued by the Mississippi Department of Education with an endorsement in the area(s) of work for which the applicant is applying."[42] The Handbook goes on to state that "[o]nce a position is approved, the following steps will be taken to staff the position: (1) The administrator/supervisor will retrieve the *valid applications* for the position from Applitrack[.]"[43] Accordingly, the policy very clearly states that only **valid** applications will be considered. Billups's application was admittedly invalid.[44] As such, *even if* LMSD was accepting and considered external applications (which it was not), Billups did not submit a valid application with LMSD for LMSD to consider.[45]

As such, even if LMSD were accepting applicants for the boys head coaching position, Billups failed to apply for the job because (1) he only applied for some general coaching position within

---

establish a prima facie failure-to-promote case because she cannot show that she 'applied . . . for a job for which her employer was seeking applicants.").

[41] *See* **[Doc. 60-7]** at DEF

[42] **[Doc. 60-7]** at DEF 23, Section A(3).

[43] **[Doc. 60-7]** at DEF 23.

[44] *See* **[Doc. 60-6]** at DEF 63 (indicating no uploads associated with this applicant); at DEF 74-75 (indicating that his MDE Licenses were not issued until April 17, 2023, when he submitted his application on April 8, 2023); **[Doc. 65]** at pg. 13.

[45] *See* **[Doc. 60-7]** at DEF 23 (stating that once a position has been approved . . . [t]he administrator will retrieve the *valid* applications for the position from Applitrack . . . .").

LMSD[46] and (2) did not have a valid application on file to consider.[47]  Furthermore, dropping off an application to a Principal does not comply with LMSD's vacancy policy for external applicants to apply for declared vacancies.[48]  Indeed, LMSD's Handbook does not allow for applications to be turned in to a Principal, instead clearly stating that applications must be completed online.[49]  Billups has failed to prove a prima facie case of age-discrimination and summary judgment should be granted.

### C.  LMSD had a Legitimate Non-Discriminatory Reason for Not Interviewing Billups.

LMSD has provided legitimate, non-discriminatory reasons for failing to hire/interview Billups.  "Where the plaintiff succeeds in establishing a prima facie case, the burdens shifts to the defendant to proffer a legitimate, nondiscriminatory reason for its action."[50]  "The burden on the employer at this stage is one of production, not persuasion, and does not involve any assessment of the employer's credibility."[51]

LMSD articulated two major legitimate, nondiscriminatory reasons for not interviewing/not hiring Billups in the coaching position: LMSD considered only internal candidates for the job and that Coach McCurry was the most qualified candidate for the job.[52] Billups makes no argument that the proffered reasons were legitimate and non-discriminatory; instead, focusing solely on

---

[46] *See* **[Doc. 60-6]** at DEF 64.

[47] *See id.*; **[Doc. 60-7]** at DEF 23.

[48] **[Doc. 60-7]** at DEF 22-24.

[49] **[Doc. 60-7]** at DEF 23.  LMSD notes that applications for non-certified employment with LMSD must be returned to the Office of the *Superintendent*.  *Id.* However, there is no policy allowing an applicant to submit an incomplete application to a principal for consideration.  *See id.*

[50] *Eugene Long v. city of Llano*, 2024 U.S. Dist. LEXIS 112354, at *10 (W.D. Tex. June 26, 2024) (internal quotation and citations omitted).

[51] *Dietz v. Zodiac Seats Us LLC*, 2020 U.S. Dist. LEXIS 31005, at *15 (E.D. Tex. Feb. 4, 2020) (quoting *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007)).

[52] *See* **[Doc. 61]** at Section IV.B.

whether the proffered reasons were pretext for discrimination.[53]  Out of an abundance of caution, LMSD re-submits and re-assets its argument located in its initial briefing here.[54]

### D.  There Is No Evidence of Pretext.

Because LMSD has articulated legitimate, nondiscriminatory reasons for failing to interview/hire Billups, "the burden shifts back to [Billups], who 'must prove by a preponderance of the evidence that the legitimate reasons offered by the employer were not its true reasons, but were a pretext for discrimination.'"[55]  "'To establish pretext, [Billups] must show that [LMSD's] proffered explanation was false or unworthy of credence.'"[56]  This, Billups still cannot do.

Billups argues that the legitimate non-discriminatory reasons submitted by LMSD for its failure to interview/hire Billups are pretextual, and false or unworthy of credence, because (1) LMSD submitted misleading EEOC representations and a contradictory litigation stance; (2) inconsistent application of the internal hiring policy; (3) Billups was the most qualified candidate, not Coach McCurry; (4) LMSD's handling of community advocacy; and (5) Shorter's statement's that Billups is "too old,".[57] LMSD will discuss each argument in turn.

As an initial matter, LMSD notes that the Board of Trustees is unequivocally has the final authority to make employment decisions for the District.[58]  Billups has wholly failed to submit any evidence that the Board of Trustees' decision to hire Coach McCurry, instead of him, was

---

[53] *See* **[Doc. 88]** *generally*; at pg. 15 ("The contradictions within LMSD's decision-makers' testimonies, between their EEOC Position Statement and litigation claims, and in their handling of evidence further undermine their credibility, suggesting these reasons are pretextual.); at pg. 25 (discussing pretext).

[54] **[Doc. 61]** at Section IV.B.

[55] *Busken v. City of Greenville*, 2021 U.S. Dist. LEXIS 212300, at *5 (N.D. Tex. Nov. 3, 2021) (quoting *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 474 (5th Cir. 2015)).

[56] *Yates*, 115 F. 4th at 421 (quoting *Vaughn v. Woodforest Bank*, 665 F.3d 632, 637 (5th Cir. 2011)).

[57] **[Doc. 88]** at pgs. 14-32.

[58] *See supra* fn.5.

11

premised on any discriminatory age-related motive.[59] "To show pretext on summary judgment, 'the plaintiff must substantiate his claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision.'"[60] Here, Billups cannot show that "discrimination lay at the heart" of the Board of Trustees' decision, and thus, can show no pretext.

### 1. Misleading EEOC Representations and Contradictory Litigation Stance.

LMSD did not make any misleading EEOC representations or take any contradictory litigation stance. Billups argues that there are "inconsistencies" between LMSD's EEOC Position Statement and litigation record, which acknowledges Plaintiff's interactions and application, may suggest a lack of transparency in LMSD's representations.[61] However, there are no inconsistencies in LMSD's EEOC position and its litigation position.

LMSD acknowledges that "[a]n employer's inconsistent explanations for an employment decision 'cast doubt' on the truthfulness of those explanations."[62] However, the Fifth Circuit has explained that "reasons for an [employment decision] that are merely 'additional,' and not contradictory, do not necessarily suggest pretext."[63] "Indeed, [the Fifth Circuit] has never held that an employer giving additional reasons to the district court to supplement those given to the EEOC supports an inference of pretext."[64] The Fifth Circuit goes on to explain that the "mere fact that [the employer's] attorneys provided the EEOC with only one of [the employer's] three justifications for termination [the plaintiff's] employment does not constitute a substantial showing

---

[59] *See generally*, **[Doc. 88]**.
[60] *Burnett v. E. Tallahatchie Sch. Dist.*, 2024 U.S. Dist. LEXIS 5965, at *10 (N.D. Miss. Jan. 11, 2024) (quoting *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002)).
[61] **[Doc. 88]** at pg. 17.
[62] *Caldwell v. KHOU-TV*, 850 F.3d 237, 242 (5th Cir. 2017).
[63] *Bennett*, 648 Fed. Appx. at 431.
[64] *Id.* (collecting cases).

of pretext."[65]

Here, LMSD has done just that. LMSD has never waivered from its position that there was no vacancy declared and therefore LMSD did not accept external applicants for the job, looking only at internal employees before posting the job.[66] And now, at the district court level, LMSD has provided additional, or supplemental, reasons for not hiring Billups for the job.[67] None of the legitimate, non-discriminatory reasons listed by LMSD in its briefing are inconsistent with its EEOC Position Statement and Response to requests for information.

To the extent that Billups argues that LMSD failed to acknowledge that it had knowledge of Billups's interest in the position, this is acknowledged in both its Position Statement and in it briefing to the Court.[68] There is no inconsistency here. Lastly, the "introduction of the license and aggression rationales in litigation, absent from the EEOC Position Statement" does not "suggest[] that these are post-hoc, self-serving justifications to bolster Defendant's position.[69] First, LMSD's assertion that Billups did not submit a complete application, partially because he failed to include his license in the application, was used to negate Billups's *prima facie* case—and such a fact was not proffered as a legitimate, non-discriminatory reason for failing to hire Billups.[70] Lastly, Billups's claims that his aggressive coaching style is uncorroborated and self-serving is incorrect.[71] Shorter testified that he personally witnessed Billups aggressive style twice "with [his] own eyes."[72]

---

[65] *Id.*
[66] **[Doc. 64-3]**; Ex. B; **[Doc. 61]** at Section IV.A; at Section IV.B.1.
[67] **[Doc. 61]** at Section IV.
[68] Ex. B; **[Doc. 64-3]**.
[69] **[Doc. 88]** at pg. 17.
[70] *See* **[Doc. 61]** at Section IV.B.
[71] **[Doc. 88]** at pg. 17.
[72] **[Doc. 60-1]** at pg. 35, ln. 21 – pg. 36, ln. 24.

In short, none of the arguments presented by Billups here show that LMSD's proffered reasons for failing to hire Billups were "false" or "unworthy of credence." LMSD merely supplemented its reasons for failing to hire Billups, none of which are inconsistent with its assertions in the EEOC filings. Billups cannot establish pretext.

### 2. Inconsistent Application of the Internal Hiring Policy.

LMSD did not apply its internal hiring policy inconsistently. First, there is no evidence in the record that LMSD accepted and considered external applications or interviewed any external applicants, negating any argument that LMSD failed to apply the hiring policy consistently.[73]

As stated above, LMSD's policy on vacancies is that one must first be ***declared*** by the District, and sets forth procedural steps to get permission for the declared vacancy to be posted for external applications.[74] This written policy providing a guideline to post a declared vacancy is not inconsistent, and does not present a deviation, with LMSD's preference to first look internally to fill a position prior to declaring a vacancy.[75] Luke, Shorter, and Turner all testified that before declaring a position vacant, they first consider internal candidates.[76] And Billups has provided absolutely no evidence contradicting this testimony, or providing examples instances where LMSD deviated from this policy. There is no disputed evidence that LMSD considered internal

---

[73] **[Doc. 60-1]** at pg. 41, ln. 15 – pg. 42, ln. 14 (indicating that other coaches were calling Shorter but he told them that if they decide to post the job then resumes can be sent and that other external applicants were interested in the job); **[Doc. 60-2]** at pg. 9, lns. 3-14 (indicating they interviewed three coaches currently employed at LHS); **[Doc. 60-4]** at pg. 8, lns. 7-16 (indicating that Dr. Luke was apprised of Shorter and Turner's decision to "see if they had viable candidates inside the school.").

[74] **[Doc. 60-7]** at DEF 22.

[75] *Compare* **[Doc. 60-7]** at DEF 22 ("*When* a vacancy is declared in the school district . . . ") *with* **[Doc. 60-1]** at pg. 7, lns. 7-12 (stating that LMSD normally interviews in house, "then we open the job up") *and* **[Doc. 60-4]** at pg. 6, ln. 24 – pg. 7, ln 1 (stating that only after an internal campus search, District-wide search, does LMSD post the vacancy public and accept external applications.).

[76] **[Doc. 60-1]** at pg. 7, lns. 7-12; **[Doc. 60-2]** at pg. 7, lns. 4-14; at pg. 11, ln. 19 – pg. 12, ln. 12; **[Doc. 60-4]** at pg. 6, ln. 1 – pg. 7, ln 1.

14

candidates before declaring any vacancy, and this is exactly what happened in this case. Billups's "disagreement" with how LMSD applied this policy does not equate to pretext for discrimination.[77] Billups's argument that LMSD's Handbook does not support LMSD's hiring practice in this case fails to consider that a vacancy must first be actually declared by the District—which did not occur in this case. Furthermore, Billups' mere disagreement with the application of LMSD's policy does not show pretext.[78] LMSD applied its internal hiring policy consistently, and did not deviate from its policies. All of Billups's assertions that LMSD did not consistently apply its policy fail because LMSD *did* consistently apply its internal candidate policy, and therefore, LMSD's reliance on its policy of looking internally before declaring a vacancy as a legitimate, non-discriminatory reason for the employment action cannot be false or unworthy of credence—because it is not false.

Even if LMSD did deviate from its standard procedure, "[m]ere deviations from policy or a disagreement about how to apply company policy, however, do not show pretext."[79] "The ADEA does not 'protect older employees from erroneous or even arbitrary personnel decision, but only from decision which are unlawfully motivated.'"[80] "Plaintiffs, therefore, must connect a departure from or misapplication of procedure to a discriminatory motive . . . ."[81] ***Nowhere*** in Billups

---

[77] *See Brown v. San Antonio Food Bank*, 2024 U.S. App. LEXIS 7249, at *10-*11 (5th Cir. March 27, 2024) ("Here, Tesch testified that company policy required her to draft questions to the individuals named in a complaint regarding the complaint's allegations. Tesch followed this policy by informing Aguirre and Borrego of the complaint against them and requiring them to answer questions pertaining to the complaint's allegations. And although Tesch testified that she was required to keep complaints anonymous, she stated that the allegations in Brown's complaint made clear that Brown was the author. In light of the above testimony, Brown has, at most, pointed to a disagreement in how the Food Bank applied its confidential complaint policy, and has provided no evidence that Tesch was 'willing to deviate from established procedures in order to accomplish a discriminatory goal.'").

[78] *Oldenburg*, 2020 U.S. Dist. LEXIS 109035, at *16 (citations omitted) ("Mere deviations from policy or a disagreement about how to apply company policy, however, do not show pretext.).

[79] *Oldenburg*, 2020 U.S. Dist. LEXIS 109035, at *16 (citations omitted); *see also Brown*, 2024 U.S. App. LEXIS 7249, at *10-*11.

[80] *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 460 (5th Cir. 2019) (quoting *Moss*, 610 F.3d at 926).

[81] *Id.*

discussion of inconsistent application of policies does he connect such alleged inconsistent application with a discriminatory motive.[82]

Next, Billups argues that "Shorter's willingness to entertain external candidates by instructing them to send resumes if the position was posted indicates flexibility in the hiring process" does not support Billups's position. It supports LMSD's position. Shorter testified that "[a]nd I told some of these coaches that reached out to me before we even posted the job and everything that, you know, that if *we decide to post the job*, you know, we'll post it, and then you guys can send resumes."[83] This only supports LMSD's assertion that the job was not open to external candidates and that LMSD followed its policy here. Billups cannot show that (1) LMSD inconsistently applied its internal hiring policy or (2) that even if it did, that such application was pretext for a discriminatory motive.

### 3. Billups vs. McCurry's Qualifications

Billups cannot meet his burden that he is the better qualified candidate through his own speculation and beliefs, or for the mere fact that he had more experience. "'A showing that the unsuccessful employee was 'clearly better qualified' (as opposed to merely better or as qualified) than the employees who are selected will be sufficient to prove that the employer's proffered reasons are pretextual.'"[84] To prove that Billups was "clearly better qualified," required "'evidence from which a jury could conclude that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'"[85]

---

[82] **[Doc. 88]** at pgs. 17-23.
[83] **[Doc. 60-1]** at pg. 41, ln. 22 – pg. 43, ln.
[84] *Christopher v. Houston Cmty. College Sys.*, 2012 U.S. Dist. LEXIS 16954, at *12 (S.D. Tex. Feb. 9, 2012) (quoting *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922-23 (5th Cir. 2010)).
[85] *Miller v. Novo Nordisk, Inc.*, 2021 U.S. Dist. LEXIS 36856, at *3 (5th Cir. Dec. 14, 2021) (quoting *Moss*, 610 F.3d at 923).

The Fifth Circuit has noted that this is a "high bar."[86]  "Indeed, 'differences in qualifications are generally not probative evidence of discrimination.'"[87]  It is also "well-settled that more years of service do not make an applicant clearly better qualified."[88]  Accordingly, "[e]mployers may thus prioritize specific qualifications over general qualifications and years of service."[89]

Here, LMSD set forth many specific qualifications considered when recommending and approving hiring Coach McCurry.  In addition to Coach McCurry's success as the girls basketball coach (winning a state championship) and success in the classroom,[90] LMSD noted that the boys basketball team *specifically asked* for Coach McCurry to be their coach.[91]  This is undisputed by Billups.[92]  Additionally, Coach McCurry had great relationships with the parents of his players.[93]  And lastly, LMSD felt that Coach McCurry's coaching style was more suited to the students at Louisville High School.[94]

These job-specific qualifications that LMSD considered versus Billups's general qualifications that he has more experience and a winning record, does not allow a jury to conclude that no reasonable person, in the exercise of impartial judgment, could have chosen [Coach McCurry] over [Billups] for the job in question.'"[95]  Billups cannot show that he was clearly better qualified for the position over Coach McCurry, and thus cannot show pretext.[96]

---

[86] *See id.*
[87] *Id.* (quoting *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 357 (5th Cir. 2001)).
[88] *Id.* (citing *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 42 (5th Cir. 1996) ("[G]reater experience alone will not suffice to raise a fact question as to whether one person is clearly more qualified than another.")).
[89] *Id.* (citing *Martinez v. Tex. Workforce Comm'n-Civil Rts. Div.*, 775 F.3d 685, 688 (5th Cir. 2014)).
[90] **[Doc. 60-3]** at pg. 6, ln. 1 – pg. 8, ln. 1; at pg. 8, lns. 2-16.
[91] **[Doc. 60-1]** at pg. 12, ln. 14 – pg. 13, ln. 24; **[Doc. 60-2]** at pg. 6, ln. 16 – pg. 7, ln. 3; **[Doc. 60-4]** at pg. 9, lns. 2-7.
[92] **[Doc. 60-5]** at pg. 50, lns. 12-14.
[93] **[Doc. 60-2]** at pg. 18, lns. 4-21.
[94] *See* **[Doc. 61]** at pgs. 13-14.
[95] *Miller v. Novo Nordisk, Inc.*, 2021 U.S. Dist. LEXIS 36856, at *3 (5th Cir. Dec. 14, 2021) (quoting *Moss*, 610 F.3d at 923).
[96] *See McDaniel v. AMTRAK*, 2016 U.S. Dist. LEXIS 177882, at *83-*84 (E.D. La. Dec. 22, 2016) ("Moreover, the

Billups also argues that LMSD shifted its reasons in why it failed to hire Billups due to Shorter's claim that Billups's teaching license had expired.[97]  However, this is immaterial as LMSD did not proffer this as a legitimate, non-discriminatory reason.[98]  It is axiomatic that a plaintiff must "'produce substantial evidence indicating that the <u>proffered legitimate nondiscriminatory reason</u> is a pretext for discrimination.'"[99]  And lastly, Billups's argument that Turner and Shorter did not review Billups's resume only lends credence to LMSD's central argument that the vacancy for this position was never declared and LMSD did not consider external applicants.[100]  These arguments fail to show any pretext.

### 4.  LMSD's "Handling of Community Advocacy" is Irrelevant.

Billups makes much to-do over the fact that *some* community members expressed that Billups should be considered for the head coach job.[101]  However, there is absolutely no duty by the school district, or any of its employees, to consider the public's opinion on employment decisions.[102]  This evidence is irrelevant.  Furthermore, such public pressure, as well as some discussion from certain board members, does not indicate any inconsistent application of policy, that the vacancy was declared, or that LMSD excluded Billups from consideration on some discriminatory basis.  It shows the opposite.

---

evidence is clear that an applicant's years of experience was not the only factor in Popo's decision, and that she sought other key qualities that she identified in Ball-Austin.  The Court notes that Ball-Austin 'met the minimum job qualifications and had her own array of qualifications and certifications not considered or accounted for by McDaniel.  In other words, McDaniel's qualifications are 'not so superior to those of the selectee to allow an inference of pretext, and it is clear that Popo's judgements on qualifications are somewhere within the realm of reason, sufficient to prevent a finding of pretext.").

[97] **[Doc. 88]** at pg. 24.

[98] *See* **[Doc. 61]** at Section IV.B.

[99] *Outley v. Luke & Assocs.*, 840 F.3d 212, 218 (5th Cir. 2016) (quoting *Laxton*, 333 F.3d at 578).

[100] **[Doc. 61]** at Section IV.A; at Section IV.B.1.

[101] *See generally* **[Doc. 88]** at pgs. 15-33.

[102] *See supra* fn.5 (collecting cases finding that employment decisions are left solely to the school board).

Instead of showing that LMSD's proffered reason for not hiring/interviewing Billups is false or unworthy of credence, such evidence shows that—*despite* pressure from some members of Trojans 4 Life and some board members as to Billups and the head coaching job, Turner, Shorter, Luke, and the Board of Trustees consistently applied their hiring policies of determining whether there was a qualified internal candidate before declaring a vacancy and accepting external applications. Further, such evidence supports LMSD's proffered legitimate, non-discriminatory reason for failing to hire/interview Billups. This evidence is irrelevant, and cannot establish pretext.

### 5. Shorter's Comments

Lastly, Billups argument that Shorter's alleged comments that he is "too old" is evidence of pretext fails. LMSD notes that although Shorter's comments cannot be considered as direct evidence, they can potentially be considered as evidence of pretext.[103] First, as shown above, Billups wholly fails to show that LMSD's proffered reasons for failing to hire/interview him were pretext for discrimination. As such, because these age-related remarks are the only evidence Billups can offer as circumstantial summary judgment evidence, standing alone, they are not probative of discriminatory intent.[104]

Even if this Court were to find that there was other circumstantial evidence of discrimination, Shorter's alleged remark constitutes only a stray remark. "To be relevant evidence considered as part of a broader circumstantial case, 'the comments must show: (1) discriminatory animus (2) on

---

[103] *See Goudeau v. Nati'l Oilwell Varco, L.P.*, 793 F.3d 470, 475 (5th Cir. 2015) (citations omitted) ("In a circumstantial case like this one, in which the discriminatory remarks are just one ingredient in the overall evidentiary mix, we consider the remarks under a 'more flexible' standard.").

[104] *See Morris v. Tri-State Truck Ctr.*, 2016 U.S. Dist. LEXIS 48306, at *12-*13 (N.D. Miss. Apr. 11, 2016) (collecting cases); *see also Palasota v. Haggar Clothing Co.,* 342 F.3d 569, 577 (5th Cir.2003) ("After *Reeves*, . . . so long as remarks are not the only evidence of pretext, they are probative of discriminatory intent.").

the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decisionmaker."[105] Here, there is no evidence that Shorter (1) was primarily responsible for the challenged employment decision or (2) had influence or leverage over the Board of Trustees' decision. Although Shorter did participate in discussions with Turner as to the recommendation to hire Coach McCurry, there is no evidence, and Billups does not argue, that he had any influence over Turner, who was the Principal of LHS and the sole person responsible for making recommendations to Dr. Luke.[106] Additionally, there is no evidence, and Billups does not argue, that Shorter had any influence or leverage over Dr. Luke's determination to recommend Coach McCurry to the Board of Trustees. And lastly, but importantly, there is no evidence and Billups does not argue that Shorter had any influence or leverage over the Board of Trustee's decision to hire Coach McCurry.

In sum, Billups cannot show that LMSD's proffered legitimate, non-discriminatory reasons for failing to hire/interview him were false or unworthy of credence because the given reasons were not false. At all turns, the evidence points to the fact that Billups was not considered for the position because the position was not open to external candidates. Further, all evidence points to the veracity of LMSD's assertions that it followed its hiring policy in looking at internal candidates before declaring a vacancy. No inference can be drawn from any evidence that the proffered legitimate, non-discriminatory reasons set forth by LMSD were merely pretext for discrimination. Summary judgment should be granted.

**CONCLUSION**

For all of the reasons listed above, LMSD is entitled to summary judgment and Billups's

---

[105] *Id.* (citations and quotations omitted).
[106] *See generally* **[Doc. 88]**.

Complaint should be dismissed with prejudice.

**WHEREFORE PREMISES CONSIDERED,** Defendant, Louisville Municipal School District, prays that Plaintiff's Complaint be dismissed with prejudice.

**RESPECTFULLY SUBMITTED** this the 27th day of February, 2026.

**JACKS| GRIFFITH| LUCIANO, P.A.**

By:  /s/ ***Katherine P. McClellan***
Katherine P. McClellan, MS Bar No. 105718
Mary McKay Griffith, MS Bar No. 100785
Daniel J. Griffith, MS Bar No. 8366
Attorneys for Defendant

Of Counsel:

**JACKS| GRIFFITH| LUCIANO, P.A.**
150 North Sharpe Street
P. O. Box 1209
Cleveland, MS 38732
Phone No. 662-843-6171
FAX No. 662-843-6176
Email: katie@jlpalaw.com
        mgriffith@jlpalaw.com
        dgriffith@jlpalaw.com

## <u>CERTIFICATE OF SERVICE</u>

I, Katherine P. McClellan, attorney of record for Defendants, do hereby certify that I have this day caused a true and correct copy of the above and foregoing *Reply in Support of Motion for Summary Judgment* to be delivered by the ECF Filing System which gave notice to all attorneys of record.

**DATED** this 27th day of February, 2026.

<u>/s/</u> ***Katherine P. McClellan***
Katherine P. McClellan